**VITEK SYSTEMS, INC., Appellant,**

v.

**ABBOTT LABORATORIES, Appellee.**

**No. 81–1905.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1982.

Decided April 13, 1982.

Thomas E. Wack, St. Louis, Mo., for appellee Abbott Laboratories.

Lionel L. Lucchesi, Polster, Polster & Lucchesi, St. Louis, Mo., for appellant; George W. Finch, John P. Scholl, Vitek Systems, Inc., Long Beach, Cal., Harvey A. Gilbert, Vitek Systems, Inc., Hazelwood, Mo., of counsel.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Vitek Systems, Inc. (Vitek) appeals from a judgment entered in the District Court[1] for the Eastern District of Missouri denying injunctive relief for alleged trademark infringement. Following a bench trial, the district court found that Abbott Laboratories, Inc.'s (Abbott) "MS–2" mark, viewed by itself or in conjunction with Abbott's logo, , did not infringe upon Vitek's "AMS" mark because there was no substantial likelihood of confusion as to the source of the parties' products.[2] For reversal Vitek argues that the district court's findings are clearly erroneous. For the reasons discussed below, we affirm.

1. The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri.

2. The district court also found that Abbott's use of its mark did not result in unfair competition. Vitek does not challenge that finding on appeal.

A complete statement of the facts is set forth in *Vitek Systems, Inc. v. Abbott Laboratories, Inc.*, 520 F.Supp. 629 (E.D.Mo. 1981), and will not be repeated here. The pertinent facts are as follows. Vitek, a wholly-owned subsidiary of McDonnell Douglas Corp. (McDonnell), and Abbott are competitors in the manufacturing and marketing of automated computerized microbial testing instruments. The market for the instrument consists of approximately 2,000 clinical laboratories and acute care facilities. The cost of the instrument ranges between $26,500 and $74,500. The instruments are marketed through displays at trade shows, journal advertising and direct sales calls. The instruments are never sold on a single sales contact and impulse buying is unknown in the field.

The Vitek instrument was developed in the early 1970s by McDonnell. In 1974, following an in-house contest at McDonnell, the name "AutoMicrobic System" was chosen for the instrument. On July 9, 1976, McDonnell filed trademark registration applications for two marks, "AutoMicrobic System" and "AMS." The "AMS" registration was granted on April 5, 1977.

The Vitek instrument was originally marketed by the Fisher Scientific Company (Fisher). Fisher promoted the instrument primarily under the name "AutoMicrobic System." At other times it was referred to as the "*AMS* AutoMicrobic System." In its promotional materials Fisher would occasionally use its own name and logo in conjunction with the name and logo of McDonnell.[3]

On June 8, 1977, McDonnell formed Vitek pursuant to its decision to phase out Fisher and McDonnell identification of the instrument. In 1978, Vitek assumed the marketing functions and employed a Chicago advertising firm to create a public image of Vitek and the instrument. As a result, emphasis was placed upon the "AMS" mark beginning in late 1978.

Abbott developed its instrument commencing in 1973. It adopted the mark "MS–2" on September 2, 1976, and filed a trademark registration application in November of that year. However, it developed that in mid-1976 an affiliate of the Rohm & Haas Co. had filed a registration for the "MS–2" mark claiming a first use on May 11, 1973. Abbott then considered changing its mark to "QS–2," but instead negotiated an agreement with Rohm & Haas whereby Abbott was allowed to continue the use of the "MS–2" mark. One provision of the agreement was that Abbott would display its logo on the instrument and in its promotional materials to distinguish the source of its product from Rohm & Haas.

The Abbott instrument was first displayed in this country at a trade show in October 1976. It was displayed as the "Abbott MS–2." The Vitek (then McDonnell) instrument was displayed at the same show under the name "McDonnell-Fisher Auto-Microbic System."

On or about November 5, 1976, counsel for McDonnell wrote a letter to Abbott claiming that Abbott's mark infringed upon the "AMS" mark. Abbott took the position that there was no infringement and informed McDonnell that it was seeking trademark registration of the "MS–2" mark. Abbott continued to use the mark on its instrument and in its promotional material. Vitek then instituted this infringement proceeding in 1980, claiming that there was a likelihood of confusion because consumers would think that the MS–2 had some connection with Vitek and would consider it on that basis.

After a full bench trial the district court held that Vitek had failed to carry its burden of showing a likelihood of confusion as to the source of the product based on the following findings, summarized here: (1) a lack of similarity between the marks; (2) the sophistication of the buyers and the

---

**3.** The Fisher contract was in effect for approximately four years. During that period of time only seven instruments were delivered by McDonnell to Fisher. Fisher did not make any sales, although a few of the instruments which had been placed with prospective customers for evaluation were ultimately purchased by them.

complexity of the sales process; (3) the absence of credible, unambiguous evidence of actual confusion; (4) the fact that the Vitek name and AMS mark were not emphasized until late 1978; and (5) Abbott's adoption and use of the MS–2 mark were done in good faith. On appeal Vitek challenges the findings regarding the similarity of the marks and the evidence of actual confusion.

The essential question in any case of alleged trademark infringement is whether purchasers are likely to be misled or confused as to the source of the different products. *See SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir. 1980). The resolution of this issue requires the court to consider numerous factors to determine whether, under all the circumstances, there is a likelihood of confusion. *Id.* at 1091, *citing Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975). Actual confusion is not essential to a finding of infringement. *SquirtCo. v. Seven-Up Co.*, 628 F.2d at 1091, *citing Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958). However, a mere possibility is not enough; "there must be a substantial likelihood that the public will be confused." *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir. 1980) (citations omitted). "Likelihood of confusion is a finding of fact. Therefore, we must uphold the trial court's finding ... unless it is clearly erroneous." *SquirtCo. v. Seven-Up Co.*, 628 F.2d at 1091 (citations omitted).

With the foregoing principles in mind we examine Vitek's arguments. Vitek first argues that the district court erred in not finding that the marks are confusingly similar. It reasons that Abbott's logo,  , is an "A" so that the Abbott's

mark is actually "AMS–2"—a designation confusingly similar to Vitek's "AMS" mark. In support of its argument Vitek requests this court to take judicial notice of Abbott's 1980 renewal trademark registration in which Abbott's vice-president called the logo a "block A." Vitek reasons that the registration is an admission by Abbott that its logo is an "A" proving that the marks are confusingly similar.[4] We disagree.[5]

"Similarity of the marks ... must be considered as they are encountered in the marketplace. Although similarity is measured by the marks as entities, similarities weigh more heavily than differences." *Alpha Industries v. Alpha Steel Tube & Shapes*, 616 F.2d 440, 444 (9th Cir. 1980), *citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979). The comparison should be made "in light of what occurs in the marketplace," taking into account the "circumstances surrounding the purchase of the goods." *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 759 (9th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979), *citing James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976).

The manner in which Abbott describes its logo for registration purposes carries little weight in determining whether the marks are confusingly similar to the public. The logo is not presented as a block A on the instrument or in Abbott's promotional materials. The district court properly considered Abbott's systematic and continuous use of its logo since the 1950s and found that the logo "has attained wide recognition as the symbol of Abbott Products."[6] *Vitek Systems, Inc. v. Abbott Laboratories, Inc.*, 520 F.Supp. at 631. That finding is supported by the testimony of Vitek's own witnesses identifying   as Abbott's logo rather than an "A".

---

**4.** The trademark registrations were not introduced at trial. However, Vitek correctly states that this court may take judicial notice of Patent and Trademark Office documents.

**5.** In essence we conclude that Abbott's logo is not analogous to Gertrude Stein's rose—that is to say, an   is not an A by any other name for purposes of this case.

**6.** The Abbott logo was created in the late 1950s and has been used continuously on virtually all its products as well as on its correspondence and in its promotional materials since that time.

The district court also properly considered the facts that Abbott's logo is displayed only in connection with its corporate name and that when the logo and mark appear in proximity, the logo is contrasted in spacing, size, color and style from the mark. In contrast, the letters of "AMS" are evenly spaced and are uniform in size, color and style. Vitek's name appears on the face of its instrument and Abbott's name, as well as its logo, appears on the nameplate of its instrument. We realize that display of the manufacturer's name is not determinative of the confusion issue. *See Fisher Stoves, Inc. v. All Nighter Stove Works*, 626 F.2d at 195 (citations omitted). However, in the case of a high-priced, single-purchase article, "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." *Id., citing Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972). The district court noted other differences including the contrasting appearance of the instruments and the fact that the purchasers are knowledgeable, sophisticated specialists in their areas. *See Alpha Industries v. Alpha Steel Tube & Shapes*, 616 F.2d at 444. These differences support the district court's rejection of the likelihood of confusion.

Vitek next argues that there was evidence of actual confusion in the record and that the district court's finding in view of that evidence indicates that the district court used an erroneous standard. Much of the evidence was the testimony of Vitek and McDonnell employees and consultants to the effect that customers had told them they were confused by the marks. The district court found that the testimony was "ambiguous at best and not credibly probative of the asserted confusion." *Vitek Systems, Inc. v. Abbott Laboratories*, 520 F.Supp. at 632. On appeal Vitek highlights extracts of various witnesses' testimony to support its argument that the district

court's finding is clearly erroneous. After a review of the entire transcript we disagree.

Seven of Vitek's witnesses were employees or consultants of Vitek and McDonnell. These witnesses testified, in effect, that customers had told them that they were confused by the similarity of the marks. Such testimony was hearsay in nature and the district court properly gave it little weight. *See Flintkote Co. v. Tizer*, 158 F.Supp. 699, 702 (E.D.Pa.1957), aff'd, 266 F.2d 849 (3d Cir. 1959) (testimony as to alleged confusion of third persons "is . . . one of the most unsatisfactory kinds because it is capable of such varying inferences"). *Accord, Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 448–49 (5th Cir. 1973). In addition, the district court could refuse to credit the uncorroborated testimony of such interested persons. *United States v. Oregon State Medical Soc'y*, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952).

Vitek also introduced the testimony of three customer witnesses. Our review of the record convinces us that there is substantial evidence supporting the district court's finding that their testimony was not probative of actual confusion. For example, customer Stephen Hnatko was not asked, nor did he indicate, whether he was confused between the two instruments. Customer Connie Brown expressly denied having been confused as to the source of the instruments.[7] "Confusion, in the legal sense means confusion of source." *Fisher Stoves, Inc. v. All Nighter Stove Works*, 626 F.2d at 195 (citations omitted). The above testimony does not reveal such confusion.

Customer Rollie Rebulta testified that he used the MS–2 and AMS terms interchangeably during a meeting with Vitek representatives. However, the evidence established that a Vitek representative met with Rebulta and, contrary to company policy, brought up competitive products after Rebulta had already had five earlier meetings with Vitek representatives and had

---

7. Brown stated as follows:

Q. Okay. At any point in time, from when you first began considering the Vitek instrument, were you ever confused as to who manufactured that particular instrument?

A. No.
*Vitek Systems, Inc. v. Abbott Laboratories, Inc.*, Transcript at 152.

decided to acquire the Vitek AMS. The district court was not required to give weight to confusion created by Vitek.

 Vitek also argues that the district court erred in excluding, on hearsay grounds, employee Robert Mattaline's handwritten memorandum of his meeting with a potential customer which allegedly indicates confusion.[8] Vitek argues that the memorandum is admissible under Rule · 803(1) Fed.R.Evid., the "present sense impression" exception to the hearsay rule. We disagree. Vitek's offer of proof reveals that Vitek sought to elicit Mattaline's evaluation of the customer's thought process. As such, the testimony does fall within the present sense impression exception to the hearsay rule.[9]

The judgment of the district court is affirmed.

---

**8.** The memorandum consists of 19 handwritten pages of illegible notes. Vitek has not summarized the contents of the memorandum in its brief so that the only indication of its contents is the offer of proof made by Vitek's counsel. *See* note 9 *infra*.

**9.** Vitek's offer of proof states:
   Judge, I make an offer of proof that Exhibit 31 was the recollection of the witness of a meeting he had . . . in which the witness if asked would testify that he *perceived confusion in the witness* because the witness confused the operational characteristics of the instrument that he indicated he was familiar with . . . .

The other thing he was going—he would testify to is that the man indicated he knew all about the AMS when, in fact, he had never observed the AMS and was confused as to the fact that it was the Abbott instrument that he had interpreted as being the AMS instrument.
*Vitek Systems, Inc. v. Abbott Laboratories,* Transcript at 64–65 (emphasis supplied).