**MUTUAL OF OMAHA INSURANCE COMPANY, a Nebraska Corporation, Plaintiff,**

v.

**Franklyn NOVAK, an Individual, Defendant.**

No. CV 84–0–581.

United States District Court, D. Nebraska.

Nov. 26, 1986.

Dennis L. Thomte, Omaha, Neb., for plaintiff.

Peter J. Hoagland, Warren C. Schrempp, Omaha, Neb., for defendant.

BEAM, Chief Judge.

This matter is before the Court for decision on the merits following trial to the Court. Plaintiff Mutual of Omaha Insurance Company ("Mutual") filed this suit against Franklyn Novak alleging trade-

mark infringement under 15 U.S.C. §§ 1114(1) and 1125(a) (the Lanham Act), violations of *Neb.Rev.Stat.* § 87–302 (Reissue 1981) (the Nebraska Uniform Deceptive Trade Practices Act), common-law trademark infringement, and trademark disparagement. On November 30, 1984, this Court issued a preliminary injunction (filing 19) prohibiting the defendant from marketing T-shirts, coffee mugs and other products featuring the words "Mutant of Omaha" or "Mutant Kingdom" and bearing a logo resembling the Indianhead logo used by Mutual. Issuance of the preliminary injunction was subsequently affirmed by the United States Court of Appeals for the Eighth Circuit. *Mutual of Omaha Ins. Co. v. Novak*, 775 F.2d 247 (8th Cir.1985). Having now considered the evidence, the arguments and authorities advanced by the parties, and the record, the Court finds in favor of the plaintiff and against the defendant on all plaintiff's claims except trademark disparagement. This memorandum shall constitute the Court's findings of fact and conclusions of law pursuant to *Fed.R.Civ.P.* 52.

### FACTS

Plaintiff is a Nebraska corporation engaged since 1944 in the business of insurance sales. Its premium income in 1983 amounted to over 1½ billion dollars. Beginning in 1952, plaintiff acquired various trademark registrations for marks used in connection with its insurance services and a wildlife television program which it sponsors. Principal variations of these marks are pictured below.

In April of 1983, defendant Novak produced a design using the words "Mutant of Omaha" and an accompanying logo depicting a side view of a war-bonneted and emaciated human face. The design was initially placed on T-shirts in conjunction with the phrase "Nuclear Holocast Insurance" or "Sponsored by Mutant of Omaha Nuclear Holocaust Insurance Co." The reverse side of the shirts read "When the world's in ashes we'll have you covered." Novak marketed approximately 4000 of these T-shirts in various styles. He has also utilized the design on a more limited number of sweatshirts, caps, buttons and coffee mugs. In the spring of 1984, Novak produced another design, this time using the words "Mutant Kingdom" or "Mutant of Omaha's Mutant Kingdom" with an accompanying logo depicting a cyclops-type, one-eyed tiger. The design has been affixed to similar types of merchandise, although sold in lesser quantities. The principal variations of Novak's designs are set out below.

Mutant ᵒᶠOmaha
NUCLEAR HOLCCAUST INSURANCE

Novak actively marketed these items to the public at retail shops, exhibitions and fairs through an unincorporated company called "Mutants of Omaha". He has advertised on television, in newspapers and in magazines.

While Mutual's business endeavors are devoted principally to the sale of insurance, Mutual does use its trademarks and logos on T-shirts, sweatshirts, caps, mugs and patches. These items are offered for sale to agents and company representatives who use them as gifts or incentives to prospective or actual customers. Mutual does not market these items to the general public.

In this lawsuit, Mutual claims that Novak's use of his various designs operates to infringe and disparage Mutual's registered trademarks. In response, Novak argues that there exists no likelihood of confusion in the minds of the consuming public as to the origin or sponsorship of the T-shirts and other items. Novak also claims that his activities amount to political comment on an issue of national concern protected by the first amendment and that the products are good faith parody and satire which are not actionable under the trademark laws.

## LAW

### A. Trademark Infringement

In addition to common law trademark infringement, Mutual alleges that Novak has violated several different statutes. Under the Lanham Act, Mutual's first claim falls under 15 U.S.C. § 1114(1), which provides that it is trademark infringement to:

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

Mutual also alleges that Novak has engaged in unfair competition in violation of

section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That section prohibits as unfair competition the use in interstate commerce of any "false designation of origin, or any false description or representation, including words or symbols tending falsely to describe or represent the same...." *Id.*

Finally, Mutual alleges violations of the Nebraska Uniform Deceptive Trade Practices Act, *Neb.Rev.Stat.* § 87–301 *et seq.* (Reissue 1981). The Act prohibits a broad panoply of deceptive trade practices, including confusing customers as to the origin of goods or services. *Id.* at § 87–302. *See Midway Manufacturing Co. v. Dirkschneider,* 571 F.Supp. 282 (D.Neb.1983).

■ For the purposes of this case, the elements of all of these various infringement claims are the same. *See Bi-rite Enterprises Inc. v. Button Master,* 555 F.Supp. 1188, 1192 (S.D.N.Y.1983). Mutual must show that it owns a protectible trademark and that Novak has used, in commerce, a similar mark that is likely to cause confusion as to the source of Novak's goods or the involvement or association of Mutual in Novak's business. Here, the fact that Mutual owns federally registered trademarks which have been used in interstate commerce has not been contested. Thus, as in most trademark infringement cases, plaintiff's showing of a "likelihood of confusion" is the gravamen of its claim. *See WSM, Inc. v. Hilton,* 724 F.2d 1320 (8th Cir.1984); *Vitek Systems, Inc. v. Abbott Laboratories,* 675 F.2d 190 (8th Cir. 1982); *Squirtco v. Seven Up Co.,* 628 F.2d 1086 (8th Cir.1980).

■ Several factors have been identified by the Eighth Circuit which are to be considered in determining whether there exists a likelihood of confusion. The essential inquiry is whether the defendant's design so resembles the registered mark that its use is likely to cause confusion as to product source, sponsorship or affiliation. *W.S.M. Co. v. Hilton,* 724 F.2d at 1329. The Court must examine:

1) The strength of plaintiff's trademarks;

2) The similarity between plaintiff's marks and defendant's designs;

3) The competitive proximity of the products on which the marks and designs are used;

4) Defendant's intent to pass off its goods as plaintiff's product;

5) Incidents of actual confusion; and

6) The type of product, its costs and the conditions of purchase.

*Squirtco v. Seven Up Co.,* 628 F.2d at 1090–91. *See Polariod Corp. v. Polorad Electronics,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). A review of each of these factors reveals that a likelihood of confusion does exist between Novak's design and Mutual's registered trademarks.

■ The strength of Mutual's trademarks is not disputed by Novak. Mutual has spent in excess of $150 million over the past ten years in the advertisement and promotion of its services. Its trademarks are widely exposed to the public on a frequent basis. A strong and distinctive mark such as Mutual's is entitled to greater protection. *Squirtco v. Seven Up Co.,* 628 F.2d at 1091.

■ Analysis of the second factor, the similarity of the two marks, is based on an examination of the marks and designs as a whole, including visual impression. *Id.* at 1091. The degree of similarity is judged by comparing the marks, not side-by-side, but as they appear in the marketplace. *See Vitek Systems, Inc. v. Abbott Laboratories,* 675 F.2d 190, 192 (8th Cir.1982). It is not necessary for this court to find that the names and logos are exactly the same. Similarities weigh more heavily than differences. *Id.* There may be infringement where the substantial and distinctive part of the trademark is copied or imitated. *David Sherman Corp. v. Heublin, Inc.,* 340 F.2d 377, 380 (8th Cir.1965).

A comparison of Mutual's trademarks with Novak's designs leaves little doubt that they are very similar. The lettering styles are identical, the Indian head logo depicts the same side view of a war-bonnet-

ed head, and the substitution of "Mutant" for "Mutual" is confusing and suggestive especially upon a brief glance. Novak, in fact, testified that he used Mutual's marks as a guide in creating his designs. While there are differences that can be pointed out in a side-by-side comparison, on the whole the name and logo create a substantially similar concept, image and feel which the Court finds is likely to create confusion as to source, affiliation or sponsorship on the part of consumers. *Cf. Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 625 F.Supp. 48, 56 (D.N.M.1985).

The next factor is the competitive proximity of the products. It is clear that Mutual uses its marks primarily in connection with insurance and entertainment services. While Mutual also places its marks on a variety of items such as T-shirts, coffee mugs and label patches, there was no evidence that these items are marketed directly to the public for profit. There is little, if any, direct competition between the parties. The Court notes, however, that infringement may be found in the absence of direct competitive proximity. *Squirtco v. Seven Up Co.*, 628 F.2d at 1091. *See Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F.Supp. 990, 999 (W.D.Mo.1986); *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F.Supp. 1183 (E.D.N.Y.1972).

The intent of an alleged infringer may raise an inference of a likelihood of confusion. *Squirtco v. Seven Up Co.*, 628 F.2d at 1093. *See Emerson Electric v. Emerson Quiet Kool Corp.*, 577 F.Supp. 668, 678 (E.D.Mo.1983). There is little question that the success of Novak's design depends upon consumer knowledge and recognition of Mutual's trademarks. Novak did consciously attempt to use Mutual's established name and logo to draw attention to the message portrayed by his products.

In this regard, Novak argues that his design is merely a parody or satire of Mutual's marks, and must resemble Mutual's design to be successful. Parody is not an affirmative defense to a trademark infringement claim, as Novak contends, but is merely one way of arguing that consumers are not likely to be confused as to source or sponsorship. A true parody actually decreases the likelihood of confusion because the effect of the parody is to create a distinction in the viewer's mind between the actual product and the joke. While a parody must call to mind the actual product to be successful, the same success also necessarily distinguishes the parody from the actual product. *See* 2 J. McCarthy, *Trademarks and Unfair Competition*, § 31.38 (2d Ed.1984).

Examples of parody can be found in *Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F.Supp. 785 (E.D.N.Y.1983) and *Girl Scouts of the United States of America v. Personality Posters Mfg. Co.*, 304 F.Supp. 1228 (S.D.N.Y.1969). *Tetley* involved the sale of "Wacky Packs" stickers, a series of 120 stickers satirically depicting various consumer products. The makers of Tetley Tea objected to the sticker depicting "Petley" tea, a box of "40 flea bags" made with "Orange Pekingese Fleas". The sticker pictured a sitting dog scratching fleas with its hind leg. In *Girl Scouts*, suit was brought over a poster depicting a pregnant woman in a girl scout uniform next to a traditional scout slogan—"Be Prepared". The Court finds these cases to be factually distinguishable from the case at bar. In both *Tetley* and *Girl Scouts*, the parody was so obvious and heavy handed that a clear distinction was preserved in the viewer's mind between the source of the actual product and the source of the parody. Here, the alleged parody is less obvious. While Novak's design may indeed amount to a satire of the plaintiff, it does not create a clear distinction as to the source of the message. The attempted parody does not, in this case, dispel the likelihood of confusion created by the substantially similar design employed by the defendant. *See Gucci Shops, Inc. v. R.H. Macy & Co., Inc.*, 446 F.Supp. 838 (S.D.N.Y.1977).

The next factor involves the existence of actual confusion. While evidence of actual confusion is not essential to a

finding of infringement, it is positive proof of a substantial likelihood of confusion. *Squirtco v. Seven Up Co.*, 628 F.2d at 1091. At trial, Mutual introduced the results of a survey conducted by Sorenson Marketing and Management Corporation of New York, New York (Plaintiff's Exhibit 49). A total of 400 persons over the age of 21 were interviewed at random at shopping malls in New York, Denver, Chicago and San Francisco. They were shown a "Mutant of Omaha" T-shirt and asked several questions about it. Approximately 42% of those surveyed said that Mutual of Omaha or the Mutual of Omaha logo came to mind upon being shown the T-shirt. Of those who thought of Mutual, 25% said that Mutual "goes along" with the T-shirts "in order to help make people aware of the nuclear war problem". In other words, 10% of the total surveyed thought that Mutual goes along with Novak's product.

Novak has challenged the results of this survey on several grounds and has introduced the testimony of several retailers who actually sold Novak's products. Each testified that no one who actually purchased the products became confused as to their origin. While the Court agrees that the phrase "goes along with" may be slightly ambiguous, the Court finds the survey to be credible evidence of a likelihood of confusion as to source or sponsorship. The results of the survey indicate that potential consumers of insurance products are likely to be confused upon a viewing of Novak's design. The survey shows that a significant number of people equate Mutual with the message on Novak's shirts. That is precisely what the trademark laws are intended to avoid.

■ The final factor involves the type of product being sold by the defendant, its cost and the conditions of its purchase. These characteristics are relevant in that a high degree of buyer sophistication may reduce the likelihood of confusion which might otherwise exist. The Court is unpersuaded that consumers, or those who simply view Novak's design, exercise a high degree of care or thought so that they will distinguish Mutual from the message on the products. The Court notes that defendant has made no effort to include something on his products which would eliminate any link which a consumer may make between Mutual and Novak's message. Buyer sophistication does not reduce the likelihood of confusion on these facts.

■ Based on a consideration of the foregoing *Squirtco* factors, the Court concludes that Novak has infringed upon Mutual's trademarks in violation of federal and state law. Novak's design creates a likelihood of confusion as to source or sponsorship in the minds of potential consumers.

■ In defense of this claim, Novak relies on the First Amendment. He argues that his designs amount to political comment, expressing his opposition to the build-up and use of nuclear weapons which may result in nuclear holocaust and worldwide destruction. While the Court recognizes Novak's right to express his views, such a right must in this case be balanced against the rights of Mutual to protection of its trademark. Mutual's trademarks are property rights, and as such "need not yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist." *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206, quoting *Lloyd Corp. v. Tanner*, 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972). There are numerous ways in which Novak may express his aversion to nuclear war without infringing upon a trademark in the process. Just as Novak may not hold an anti-nuclear rally in his neighbor's backyard without permission, neither may he voice his concerns through the improper use of Mutual's registered trademark. Under these facts, the First Amendment provides no defense. *See Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 758–59 (9th Cir.1978); *Reddy Communications, Inc. v. Environmental Action Foundation*, 199 U.S.P.Q. 630, 634 (D.D.C.1977).

**912**

### B. *Trademark Disparagement*

█ Mutual has also alleged that Novak's designs operate to disparage Mutual's trademarks. Trademark disparagement can be found where the defendant has used the same or a confusingly similar mark in a way that creates an undesirable, unwholesome or unsavory mental association with the plaintiff's mark. *See Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir.1983); *Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788 (9th Cir.1981); *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.1979).

█ In the case at bar, Novak's design might be considered to be in poor taste by some consumers. However, it is not likely to create in the mind of consumers a particularly unwholesome, unsavory, or degrading association with Mutual's name and marks. The Court finds that there is no likelihood of trademark disparagement in this case. *See Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,* at 57.

In summary, the Court finds in favor of Mutual and against Novak on Mutual's trademark infringement claims under 15 U.S.C. §§ 1114 and 1125, the common law of unfair competition and the Nebraska Uniform Deceptive Trade Practices Act. The Court finds in favor of Novak and against Mutual on Mutual's trademark disparagement claim.

█ The Court shall, in an accompanying order, enter a permanent injunction against Novak in accordance with this memorandum. In addition to injunctive relief, Mutual seeks damages, costs and attorney fees. Because the parties sell non-competing goods, and because the Court is satisfied that the injunction will satisfy the equities of this case, no further award shall be made. *See Sweetarts v. Sunline, Inc.,* 436 F.2d 705, 712 (8th Cir.1971).

### ORDER

In accordance with the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED as follows:

1. That judgment should be and hereby is entered in favor of plaintiff Mutual of Omaha Insurance Co. and against defendant Franklyn Novak as set forth in the accompanying memorandum.

2. That defendant, his officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with defendant, should be and hereby are permanently enjoined and restrained from:

a. Using the designations "Mutant of Omaha," "Mutant Kingdom," and "Mutant of Omaha's Mutant Kingdom," alone or in combination with other words, as a trademark, tradename component, or otherwise, to market, advertise, or identify defendant's services or products;

b. Using the trademark "Mutual of Omaha," or any confusingly similar designation alone or in combination with other words, as a trademark, tradename, component or otherwise, to market, advertise, or identify defendant's services or products; and

c. Using a logo which is confusingly similar to the "Indian head" logos of plaintiff.