HAY & FORAGE INDUSTRIES,
et al., Plaintiffs,

v.

NEW HOLLAND NORTH AMERICA,
INC., Defendant.

No. 97–2150–JWL.

United States District Court,
D. Kansas.

June 22, 1998.

Thomas H. Van Hoozer, Warren N. Williams, John M. Collins, Stephen D. Timmons, Andrew G. Colombo, Hovey, Williams, Timmons & Collins, Kansas City, MO, for plaintiffs.

John T. Bangert, Sherman, Taff & Bangert, P.C., Leawood, KS, Devon A. Rolf, Shook, Hardy & Bacon, L.L.P., Kansas, MO, Mark D. Katz, Sherman, Taff & Bangert, P.C., Kansas City, MO, Thomas J. Macpeak, Robert V. Sloan, Mark Boland, Steven M.

Gruskin, Sughrue, Mion, Zinn, Macpeak & Seas, PLLC, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs allege that certain hay harvesting machines sold in the United States by defendant New Holland North America, Inc. ("New Holland") infringe upon U.S. Patent No. 5,272,859 (" '859 patent"), which is owned by plaintiff Hay and Forage Industries ("HFI"). The matter is now before the court on defendant's request pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), for the court to construe claims 1 and 10 of the '859 patent as a matter of law. The court held a hearing on the matter on June 1, 1998, and is now prepared to rule.[1] As a matter of law, the court determines that claims 1 and 10 of the '859 patent have meaning and scope as set forth below.

## I. Background

Both the plaintiffs and New Holland manufacture and sell in the United States hay harvesting machines known as mechanical drive, center pivot mower conditioners. Plaintiffs began selling their machines in 1992. New Holland entered the market in the fall of 1996. The plaintiffs' machine is manufactured and sold pursuant to the '859 patent.

Of primary importance in this case is a new feature the '859 patent added to the prior art of hay harvesting machines. This new feature was a "steering structure" interposed between the directional pulling mechanism (called the "tongue") and the cutting-power transfer mechanism (called the "gearbox") to transmit the swinging motion of the tongue to the gearbox. The parties only dispute in this *Markman* proceeding is the meaning and scope of this "steering struc-

---

1. Also pending before the court are plaintiffs' motion to strike certain evidence proffered by the defendant in connection with this *Markman* proceeding (Doc. 97), and defendant's motion in limine seeking to preclude the court's consideration of certain information proffered by the plaintiffs (Doc. 99). As the court explains more fully below, both of these motions are denied.

ture" as disclosed in claims 1 and 10 of the '859 patent.

Claim 1 of the '859 patent is as follows:

[We claim,] [i]n a pull-type crop harvesting machine, the improvement comprising:

a mobile frame;

a pull-tongue pivotally coupled with the frame for horizontal adjusting movement about a first upright axis between a number of angular positions relative to the path of travel of the machine for varying the lateral position of the machine relative to a towing vehicle;

a harvesting header supported by the frame in a position for performing harvesting operations on a crop as the machine is towed across a field,

said header having driveable operating components associated therewith;

a mechanical drive line extending along and rotatably supported by the tongue for supplying driving power to said operating components in said angular positions of the tongue;

a junction box on the header having an input shaft and an output shaft rotatably supported by the box and operably intercoupled in fixed angular relation to one another within the box,

said input shaft being operably connected with said drive line for receiving driving power therefrom and said output shaft being operably connected to said operating components for driving the same,

said box being pivotally mounted on the header for swinging movement about a second upright axis spaced horizontally from the first axis; and

*steering structure connected between the junction box and the tongue for causing the junction box to swing responsively when the latter is pivoted about said first axis between its various angular positions.*

(emphasis added). Claim 10 of the '859 patent is as follows:

In a pull type harvesting machine as claimed in [claims 1–9],

said steering structure including telescoping linkage having a front pivotal connection with the tongue at a point which is at least approximately equidistant from said opposite ends of the telescopic section.

The defendants contend that the proper construction of the "steering structure connected between the junction box and the tongue" clause of claim 1 is as follows:

a direct fastening of a steering structure to the tongue at one end and the pivoting gearbox housing or extension thereof at the other end, such as by bolting, which permits some relative movement, such as a telescoping action, to occur between those two connection points as the tongue is swung laterally.

The plaintiffs disagree. The plaintiffs believe that the proper construction of the steering structure clause is as follows:

a mechanical steering structure separate from the drive line that begins at the tongue and ends at the gearbox and that transmits the swinging motion of the tongue to the gearbox during swinging of the tongue.

## II. Discussion

When construing claims in a patent, the court must focus on how the claim would be interpreted by one of ordinary skill in the art at the time the patent was issued. *Markman,* 52 F.3d at 986. The court must look first to the claims, the specification, and the prosecution history of the patent. *Markman,* 52 F.3d at 979. Referring to claims in a patent may assist the court in determining the intended meaning of a disputed claim, but the court may not read limitations from other claims into an independent claim. *See Environmental Designs, Ltd. v. Union Oil, Inc.,* 713 F.2d 693, 699 (Fed.Cir.1983); *Kustom Signals, Inc. v. Applied Concepts, Inc.,* 995 F.Supp. 1229, 1234 (D.Kan.1998). Claims must be interpreted in light of the patent specification, of which they are a part. *Markman,* 52 F.3d at 979. The specification contains a written description of the invention and includes a best mode or preferred embodiment of the invention. *Kustom Signals, Inc.,* 995 F.Supp. at 1234, (citing *Markman,* 52 F.3d at 979). Not everything ex-

pressed in the specification must be read into the claims, however. *Intervet Am., Inc. v. Kee–Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989) ("[L]imitations appearing in the specification will not [normally] be read into claims .... [i]nterpreting what is *meant* by a word *in* a claim is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.") (citation and internal quotation marks omitted). Thus, the specification normally identifies only the best mode of practicing an invention, not the scope of the invention. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1276 (Fed.Cir.1995); *Kustom Signals, Inc.*, 995 F.Supp. at 1234, The court should also consider, within its proper context, the patent's prosecution history. *Markman*, 52 F.3d at 980 ("Although the prosecution history can and should be used to understand the language used in the claims, it too cannot enlarge, diminish, or vary the limitations in the claims.") (citations and internal quotation marks omitted).

▌ If necessary, the court may also, in its discretion, consider extrinsic evidence such as expert and inventor testimony, dictionaries, and learned treatises. *Markman*, 52 F.3d at 980. Extrinsic evidence, however, "is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.* 52 F.3d at 981. Once the court arrives at an understanding of the claim language, the court must pronounce the meaning of that language as a matter of law. *Id.*

### A. Claim 1

#### 1. Application of 35 U.S.C. § 112, ¶ 6

Congress has allowed patentees the ability to express their claims in functional, rather than structural, language, but the exercise of that ability comes at a price. "An element in a claim for a combination may be expressed as a means or step for performing a specified function, without the recital of structure, material or acts in support thereof, and *such claim shall be construed to cover the corresponding structure, materials, or acts described in the specification and equivalents thereof.*" 35 U.S.C. § 112 ¶ 6 (1994) (emphasis added) (sometimes referred to as the

"means-plus-function" formulation). Defendant contends that claim 1 of the '859 patent falls within the reach of section 112(6). Plaintiffs contend claim 1 does not fall within the statute's reach. If defendant is correct, the court must "limit the breadth of [the] claim language by restricting its scope to the structure disclosed in the specification and equivalents thereof." *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1582 (Fed. Cir.1996).

Ordinarily, the question whether a claim element triggers section 112(6) is not difficult. *Id.* "Claim drafters conventionally use the preface 'means for' (or 'step for') when they intend to invoke section 112(6), and there is therefore seldom any confusion about whether section 112(6) applies to a particular element." *Id.* It would be improper to conclude, however, that section 112(6) is triggered only if the claim uses the word "means." *Id.* 91 F.3d at 1584; *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997). Nonetheless,

the use of the term 'means' has come to be so closely associated with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that the use of a different formulation generally does not.

*Greenberg*, 91 F.3d at 1584.

▌ Under section 112(6), patentees are "afforded the option" of using the means-plus-function format. *Id.* The question in discerning whether section 112(6) applies, then, is "whether, in the selection of claim language, the patentee must be taken to have exercised that option." *Id.* The court must decide this question on an element-by-element basis, based upon the patent and the prosecution history. *Cole*, 102 F.3d at 531. A claim falls outside the ambit of section 112(6) if it recites a "definite structure which performs the described function." *Id.* Thus, the mere fact that a particular mechanism or structure is defined in functional terms "is not sufficient to convert a claim element containing that term into a 'means for perform-

ing a specified function' within the meaning of section 112(6)." *Greenberg,* 91 F.3d at 1583.

The court, after careful consideration, has determined that the steering structure clause of claim 1 does not fall within the meaning of section 112(6). The clause "steering structure connected between the junction box and the tongue for causing the junction box to swing responsively when the latter is pivoted about said first axis ..." clearly has some structural language and some functional language. Nonetheless, like the claim element at issue in *Greenberg,*

> the element in question did not use conventional "means-plus-function" language, no other element of the claim was in means-plus-function form, and nothing cited to [the court] from the prosecution history or elsewhere suggests that the patentee intended to claim in that fashion. There is therefore no reason to read the claim language in this case as reciting a means for performing a function, within the meaning of section 112(6).

*Id.* 91 F.3d at 1584.

The steering structure clause at issue here discloses structure sufficient to avoid the means-plus-function limitation.

"Steering structure," as used in claim 1, is used in the same manner as the other structural components of claim 1. Thus, the claim would give one skilled in the art no reason to believe that a "steering structure" is any less a "definite structure," *see Cole,* 102 F.3d at 531, than a "mobile frame," "pull tongue," "harvesting header," "mechanical drive line," "junction box," "input shaft," or "output shaft." Moreover, the language following "steering structure," when read in conjunction with the rest of the claim 1 language, provides further detail sufficient to enable one skilled in the art to understand the meaning of the term. The steering structure disclosed in claim 1 is not just an abstract means for performing a specified function, it is a specific device "connected between the junction box and the tongue." *See Cole,* 102 F.3d at 531 ("The claim describes not only the structure ... but also its location .... An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of the statute."). The plaintiffs have provided the court with an extensive list of patents using the term "steering structure" as a noun (not a means for accomplishing a function) in the mechanical arts.[2] This list further convinces the

---

**2.** Defendant filed a motion in limine seeking to exclude these patents as hearsay, as not properly authenticated, as improper extrinsic evidence, and as untimely presented. The court reserved ruling on this motion but now rejects these arguments and denies defendant's motion. The court rejects defendant's hearsay argument because the documents offered are not hearsay. *See* Fed. R.Evid. 801(c) (hearsay is a statement offered to prove the truth of the matter asserted). Plaintiff offers these documents not to prove the truth of any of the matters which they assert, but rather to prove that various patents use the term steering structure as a noun in a variety of contexts. In any event, even if the patents were hearsay, they would be subject to the public records exception to the hearsay rule. *See* Fed.R.Evid. 803(8)(B) (providing hearsay exception for records of public agencies setting forth matters observed pursuant to duty imposed by law as to which there is a duty to report).

The court rejects defendant's authentication argument because the court has opted to take judicial notice of the contents of the proffered patents. *See* Fed.R.Evid. 201(b)(2), (c) (court has discretion to take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *Thomas & Betts Corp. v.*

*Panduit Corp.,* 65 F.3d 654, 664 n. 12 (7th Cir. 1995) (taking judicial notice of patent in a trade dress infringement case); *Vitek Sys., Inc. v. Abbott Labs.,* 675 F.2d 190, 192 n. 4 (8th Cir.1982) (court may take judicial notice of Patent & Trademark Office Documents); *Coinstar, Inc. v. Coinbank Automated Sys, Inc.,* 998 F.Supp. 1109, 1113 (N.D.Cal.1998) (taking judicial notice of patent in a patent infringement case). The contents of a patent are capable of accurate and ready determination by resort to widely used legal online research services.

The court rejects defendant's relevancy argument because it is within the court's discretion to hear extrinsic evidence "to understand the language used in the claims." *Markman,* 52 F.3d at 980 (citations omitted).

The court rejects defendant's timeliness argument because the defendant was not prejudiced by the plaintiffs' ability to present evidence of other patents. There is no evidence that plaintiff deliberately withheld the contents of these patents until such time as the defendants were unable to reply. Plaintiff presented the patents in direct response to defendant's argument that the term steering structure was merely a recitation of an indefinite steering means by which various

court that an artisan of ordinary skill would understand the disputed term to have structure sufficient to avoid application of section 112(6). *See Greenberg*, 91 F.3d at 1583 ("What is important is not simply that [the element at issue] is defined in terms of what it does, but that the term, as the name for a structure, has a reasonably well understood meaning in the art.").

Defendant argues that the prosecution history reveals that the Patent and Trademark Office ("PTO") must have interpreted the steering structure clause in claim 1 as a means-plus-function clause. This argument is without merit because the PTO did not begin interpreting claims under section 112(6) until February 14, 1994. *See In re Donaldson*, 16 F.3d 1189, 1193–94 (Fed.Cir.1994) (expressly overruling PTO practice of not applying section 112(6) during patent examination process). Plaintiff's patent was issued on March 11, 1993. Accordingly, the court concludes that the means-plus-function limitation of section 112(6) does not apply to the steering structure clause in claim 1 of the '859 patent.

### 2. Construction of the "Steering Structure" Clause

■ The court believes that a person of ordinary skill in the art of agricultural engineering would understand the "steering structure" clause in claim 1 to have a plain meaning in light of the claims in the '859 patent, the '859 specification, and the '859 prosecution history. The court believes the clause "steering structure connected between the junction box and the tongue for causing the junction box to swing responsively when the latter is pivoted about said first axis between its various angular positions" means "a steering structure separate from the drive line that operatively interacts with the tongue at one end and operatively interacts with the junction box at the other end and that transmits the swinging motion of the tongue to the junction box during swinging of

the tongue." The steering structure must be "separate from the drive line" because it is mentioned separately from the drive line clause in claim 1, thus signifying that a person of ordinary skill in the art would consider the drive line and the steering structure to be two separate items. The steering structure must "operatively interact with the tongue at one end and operatively interact with the junction box at the other end" because the claim reveals that the steering structure must be "connected between the junction box and the tongue." The steering structure must "transmit the swinging motion of the tongue to the junction box during swinging of the tongue" because the claim reveals that the steering structure must "cause[ ] the junction box to swing responsively ... when the [tongue] is pivoted."

#### a. Construction in Light of Claims

Defendant advocates a construction different from the court's.[3] Defendant argues that the clause "connected between the junction box and the tongue" contemplates a fixed attachment of the steering structure at each terminus, such as by a bolt or a pivot pin. Defendant argues first that the term "connected" connotes a junction that is "joined or fastened together." *See American Heritage Dictionary of the English Language*, (3d ed.1992); *see also Webster's Third International Dictionary*, 480 (1986) ("joined or linked together"); *Kustom Signals, Inc.*, 995 F.Supp. 1229, 1235 (term should be given its ordinary and accustomed meaning when there is no indication in the specification that the inventor intended otherwise) (citing *Hoechst Celanese Corp. v. BP Chems, Ltd.*, 78 F.3d 1575, 1578 (Fed.Cir.1996)). Two objects joined or fastened together, argues the defendant, cannot move freely relative to one another. Thus, the connected between clause in claim 1 must contemplate a fixed

functions are performed. Defendant had every opportunity to request an opportunity to reply to plaintiff's response. Defendant did not do so. Moreover, the existence of these patents could not have been a surprise to the defendant. Anyone, including the court, has access to these patents through widely used legal online research services.

To the extent defendant's motion in limine seeks to exclude other evidence proffered by plaintiff, the motion is also denied. The court has not considered this evidence. Accordingly, there is no need to exclude it.

3. The court's construction of claim 1 is nearly identical to the plaintiffs' proposed construction.

attachment not allowing for any relative movement.

The court rejects defendant's argument because the language of the claim is not as narrow as defendant advocates. The court agrees with the defendant that two objects that are connected, under the ordinary meaning of that term, cannot move entirely freely relative to one another. The court is not convinced, however, that an artisan of ordinary skill would understand the term connected to require a rigid attachment that does not allow for relative motion. The claim itself clearly contemplates some pivotal movement between the tongue and the steering structure.[4] The definition of connected as "joined or fastened together," then, surely cannot preclude all relative movement. Moreover, the modification of the term connected by the term "between" supports the court's interpretation. For example, an object that is "connected between" two other objects is likely to be joined to the other objects in a manner less rigid than an object that is "connected to" the other objects. *See Webster's Third International Dictionary*, 209 (1986) (between defined as, *inter alia*, "filling the space limited by two objects"). This interpretation is further supported by other claims in the '859 patent. Dependent claim 11 of the '859 patent sets forth specific details concerning the connections at each end of the steering structure. The claim describes "a front connection of the [steering structure telescoping] linkage including a universal pivot." The difference in specificity between the description of the steering structure in claims 1 and 11 supports a broad reading of claim 1 and a narrow reading of claim 11. *See Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1277–78 (Fed.Cir.1995) (district court erred when it read claim limitations from narrow claims onto broader claims). The Federal Circuit has acknowledged that, in a proper case, the term "connected to" can be construed broadly enough to encompass two distant elements which are connected by intervening elements. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1578 (Fed.Cir.

1996). This court's interpretation of the '859 patent does not stretch the concept of connection nearly so far. The court believes that the term connected, properly construed in claim 1 of the '859 patent, means that the tongue and the steering structure "operatively interact," *see id.* (noting that the term "connection" had no meaning, in the context of the patent there at issue, unless the two connected objects "operatively interact[ed] with one another"), with one another allowing for some relative movement but not allowing for complete freedom of movement.

### b. Construction in Light of Specification

 Defendant next contends that the specification of the '859 patent, which discloses a steering structure linked to the tongue by a bolted, pivotal connection, compels the court to construe the steering structure clause in claim 1 to require such a connection. The court disagrees. Although claims must be read in light of the patent specification, *see Markman*, 52 F.3d at 979, limitations appearing in the specification may not be read into claims. *Intervet Am., Inc.*, 887 F.2d at 1053. Unless the means plus function limitation of section 112 paragraph 6 applies, the specification identifies only the best mode of practicing an invention, not the scope of the invention. *See* 35 U.S.C. § 112 ¶ 6; *Greenberg*, 91 F.3d at 1582; *Transmatic*, 53 F.3d at 1276. It is the claims which measure the scope of the invention. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed.Cir.1985).

The court rejects defendant's argument because it seeks a construction that would improperly read limitations in the specification onto claim 1. Even though the preferred embodiment of the '859 patent is a machine in which the steering structure is connected to the tongue by a bolted, pivotal connection, the language of claim 1 is broader than this embodiment. No usage of the terms connected or connected between in the specification suggests otherwise, other than in the context of explaining the preferred embodi-

---

4. Defendant does not argue that the claim should be construed to allow no pivotal movement between the tongue and the steering structure.

ment. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed.Cir.1988) (using specification to interpret what the patentee meant by a word or phrase in a claim is "not to be confused with adding an extraneous limitation appearing in the specification, which is improper. By 'extraneous,' we mean a limitation read into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim. 'Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims.' ") (citations omitted).

Far from supporting defendant's proposed interpretation of the steering structure clause, the court believes the '859 patent specification supports the court's interpretation. The second sentence of the '859 patent abstract describes a telescoping steering linkage "between the swing tongue and the gearbox" without reference to any particular connection. This reference serves further to convince the court that the steering structure clause of claim 1 does not require a bolted, pivotal connection, as urged by the defendants.

#### c. Construction in Light of Prosecution History

 Defendant contends that the prosecution history of the '859 patent supports a construction of the steering structure clause to require a bolted, pivotal connection. Defendant points to U.S. Patent No. 4,858,418 ("'418 patent"), which was part of the '859 patent's prosecution history. Defendant argues that the '418 patent anticipated claim 1 of the '859 patent if the '859 patent's steering structure clause is not construed to require a bolted, pivotal connection between the steering structure and the tongue. If defendant is correct that the '418 patent anticipated claim 1 as the court has construed it, then the court's construction would be incorrect because the patent examiner could not have approved the '859 patent under such construction. *See Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1573 (Fed.Cir. 1997) ("Claims may not be construed one way

in order to obtain their allowance and in a different way against accused infringers.").

The court rejects defendant's argument concerning the '418 patent because it is convinced that the '418 patent did not anticipate claim 1. The '418 patent discloses a hay harvesting machine in which the drive line and the steering mechanism are one and the same. This concept does not anticipate claim 1 of the '859 patent because claim 1 discloses a steering structure separate from the drive line.

#### d. Construction in Light of Expert Testimony

Finally, defendant relies on expert testimony to support its proposed construction. Defendant argues that the testimony of its expert, Mr. Willis R. Campbell, supports a finding that a person of ordinary skill in the art would understand the claim language to require a fixed, bolted connection. Defendant also argues that the Niemeyer RO 301–GK machine, which defendant alleges is prior art to the '859 patent, anticipates claim 1 of the '859 patent. The court rejects these arguments.

 In construing claims, the court must look to the language of the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Extrinsic evidence, while appropriate for use in the court's understanding of the terms of a patent, may not be used for the purpose of varying or contradicting the terms of the claims. *Id.* 52 F.3d at 981; *Bell & Howell Document Management Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705–06 (Fed.Cir.1997) ("When the intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence such as expert testimony for purposes of claim construction."). If the court wishes to refer to extrinsic evidence as a help in understanding technology and terminology, documentary evidence, particularly prior art, technical treatises, and dictionaries, is preferred over expert testimony. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6 (Fed. Cir.1996).

 The court rejects Mr. Campbell's testimony concerning how an artisan of ordi-

nary skill would construe claim 1 of the '859 patent because it does not believe there is any genuine ambiguity in the text of claim 1. *See Vitronics Corp.*, 90 F.3d at 1584 ("Only if there were still some genuine ambiguity in the claims, after construction of all available intrinsic evidence, should the trial court ... resort to ... expert testimony."). Mr. Campbell's testimony, although it generally was helpful to the court's concrete understanding of the workings of the plaintiffs' machine and the disputes surrounding claim 1 of the patent, is simply inconsistent with the court's reading of the words of claim 1, the patent specification, and the little prosecution history with which the court has been provided. *See Bell & Howell Document Management Prods. Co.*, 132 F.3d at 706 ("Patents should be interpreted on the basis of their intrinsic record, not on the testimony of such after-the-fact 'experts' that played no part in the creation and prosecution of the patent .... Any expert testimony that is inconsistent with unambiguous intrinsic evidence should be accorded no weight."). Accordingly, the court gives no weight to Mr. Campbell's testimony concerning how an ordinary artisan would construe claim 1.

Similarly, the court rejects Mr. Campbell's testimony concerning the Niemeyer machine. Evidence related to the Niemeyer machine, which was not part of the patent's prosecution history, is exactly the kind of extrinsic evidence the Federal Circuit has prohibited the court from considering because the defendant's evidence (consisting primarily of expert testimony) and arguments related to the machine are "for the purpose of varying ... the terms of the claims." *Id.* Defendant has offered this evidence not in an attempt to assist the court in understanding how an artisan of ordinary skill would interpret the disputed claims, *see Markman*, 52 F.3d at 981 (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life*

Sys., Inc., 887 F.2d 1070, 1076 (Fed.Cir.1989) (Newman, J., dissenting)), but rather in an attempt to convince the court that the words of claim 1 mean something other than their plain language would dictate. In any event, there are factual disputes concerning whether the Niemeyer machine is prior art or anticipatory at all. *Cf. In re Schreiber*, 128 F.3d 1473, 1477 (Fed.Cir.1997) ("[T]he question whether a claim limitation is inherent in a prior art reference is a factual issue.").[5] Accordingly, the court exercises its discretion to reject the evidence and arguments concerning the Niemeyer machine. *See Markman*, 52 F.3d at 981 (citing *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed.Cir.1984) ("A trial judge has sole discretion to decide whether or not [it] needs, or even just desires, an expert's assistance to understand a patent. We will not disturb that discretionary decision except in the clearest case.").[6]

## B. Claim 10

The parties also disagree on the proper construction of claim 10. The court repeats claim 10 here for ease of reference:

> In a pull-type harvesting machine as claimed in [claims 1–9], said steering structure including telescoping linkage having a front pivotal connection with the tongue at a point which is at least approximately equidistant from said opposite ends of the telescopic section.

The parties join issue first on the meaning of the term "telescoping." Defendant argues that the term should be construed to encompass only linkages that have overlapping sections, as if in overlapping cylindrical sections. Plaintiff argues that the term is broader, and encompasses any sliding linkage allowing for the adjustment of length.

The court agrees with defendant and holds, as a matter of law, that the term

---

5. Defendant's arguments that the Niemeyer machine is anticipatory rest largely on ex parte measurements taken by Mr. Campbell. Mr. Campbell's testimony in this regard is subject to "[t]he established doctrine that evidence of experiments conducted by an interested party, in the absence of his adversary, is always received with suspicion and given only negligible proba-

tive value." *In re Newman*, 782 F.2d 971, 974 (Fed.Cir.1986) (citation omitted).

6. Plaintiff moved to strike the testimony of Mr. Campbell and certain other evidence related to the Niemeyer machine. The court denies this motion but, as set forth above, has not credited the evidence.

"telescoping linkage" as used in the '859 patent means a linkage having overlapping cylindrical sections. The ordinary meaning of the term telescoping is "to slide or pass one within another like the cylindrical sections of a hand telescope." *Webster's Third International Dictionary*, 2351 (1986). The court believes the term telescoping is simply too narrow to encompass the entire class of sliding linkages which allow for the adjustment of length.

The parties apparently do not contest the meaning of the phrase "a front pivotal connection with the tongue at a point." Defendant urges the court to construe this phrase to mean that the steering structure must be connected to the tongue at a spot which allows for pivotal movement. Because defendant's proposed construction comports with the plain meaning of the claim terms, the court adopts this construction as a matter of law.

 Finally, the parties join issue on the meaning of the phrase "at least approximately equidistant." Plaintiff urges the court to construe this phrase as encompassing a placement of the front pivotal connection at a point where the angles of the U-joints in the telescoping drive line are approximately equal. Defendant urges the court to construe this phrase to require a placement of the front pivotal connection at a point equidistant or within manufacturing tolerances of being equidistant to the opposite ends of the telescoping drive line.

The court rejects both parties' proposed formulations. As a matter of law, the court construes the phrase "at least approximately equidistant" to require a placement of the front pivotal connection "at least reasonably close to" the exact point on the tongue that is equidistant from the opposite ends of the telescoping drive line. The ordinary meaning of the term approximately is "reasonably close to." *Webster's Third International Dictionary*, 107 (1986). Neither parties' arguments have convinced the court that any meaning of the term approximately other than its ordinary meaning should apply. The ambiguity of the term, if any exists, is inherent in claim 10, and cannot be cured by any strained construction by the court.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the disputed claims of the '859 patent will henceforth, as a matter of law, be construed in a manner consistent with this memorandum and order.

**IT IS FURTHER ORDERED THAT** the plaintiffs' motion to strike (Doc. 97) is denied.

**IT IS FURTHER ORDERED THAT** the defendant's motion in limine is (Doc. 99) is denied.

**IT IS SO ORDERED.**