**HARD ROCK CAFE LICENSING CORPORATION, a New York corporation, Plaintiff,**

v.

**PACIFIC GRAPHICS, INC., Defendant.**

**No. C91–1164Z.**

United States District Court, W.D. Washington, N.D.

Oct. 23, 1991.

---

**2.** SCI Senior Vice President/Administration, Joe E. Turner, Jr., is the Plan Administrator.

Robert Stokes, Jr., Daniel Laster, Monroe, Stokes, Eitelbach & Lawrence, P.S., Seattle, Wash. (Eric C. Cohen, Gerald T. Shekleton, Robert B. Breisblatt, Welsh & Katz, Ltd., Chicago, Ill., of counsel), for plaintiff.

Rex B. Stratton, Stratton Bellomy Ballew, Seattle, Wash., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND PERMANENT INJUNCTION ORDER

ZILLY, District Judge.

On October 15, 1991, this matter came before the Court on Plaintiff's motion for a preliminary injunction. The Court has considered the Stipulated Findings of Fact submitted by the parties, the Exhibits List for Hard Rock Cafe's Preliminary Injunction Motion, the Exhibits described therein, the Declaration of Merissa S. Kelley Goldstein, the Declaration of Lane James, the Supplemental Declaration of Robert Brown, the deposition transcripts of Lane James and Kathy Hurd, the briefs filed by the parties, and has heard oral argument. The Court finds as follows:

## STIPULATED FINDINGS OF FACT

The parties have stipulated that this court has jurisdiction and that venue is proper. The parties have also stipulated to findings of fact. The stipulation entered into by the parties is adopted by this Court as follows:

## JURISDICTION, VENUE AND PARTIES

1. This is an action for trademark infringement, false designation of origin, dilution and unfair trade practices. It is brought under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and under RCW 19.77.160 and RCW 19.86.020. Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and under the principles of pendent jurisdiction. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c). *Stipulated Facts, ¶ 1.*

## PARTIES

2. Plaintiff, Hard Rock Cafe Licensing Corporation (hereinafter "Licensing Corporation"), is a corporation organized under the laws of the State of New York. Licensing Corporation is the owner of all rights to the mark and logo HARD ROCK CAFE for restaurant services and a variety of merchandise. *Stipulated Facts, ¶ 2.*

3. Defendant Pacific Graphics, Inc. (hereinafter "Pacific Graphics") is a Washington corporation having a principal place of business at 1122 Fir Avenue, Blaine, Washington. *Stipulated Facts, ¶ 3.*

4. In 1971, Peter Morton and a partner opened an American-style hamburger restaurant in London, England, under the mark HARD ROCK CAFE. The restaurant, which featured a rock-and-roll motif, was an instant success. Since then, the London HARD ROCK CAFE has flourished, drawing tourists and local patrons. *Stipulated Facts, ¶ 4.*

5. As the result of the success of the London HARD ROCK CAFE restaurant, HARD ROCK CAFE restaurants have been opened in various locations throughout the United States. *Stipulated Facts, ¶ 5.*

6. Plaintiff Licensing Corporation acquired the ownership of and presently owns all rights in the service marks HARD ROCK CAFE and HARD ROCK CAFE and Design for restaurant services. Licensing Corporation is also the owner of the trademarks HARD ROCK CAFE and HARD ROCK CAFE and Design for a variety of apparel, including T-shirts. Licensing Corporation owns valid certificates of registration issued by the United States Patent and Trademark Office for these trademarks, as is indicated below:

| Registered Mark | Reg. No. | Date | Goods or Services |
| --- | --- | --- | --- |
| HARD ROCK CAFE | 1,397,180 | 6/10/86 | Restaurant services. |
| HARD ROCK CAFE and Design | 1,398,940 | 6/24/86 | Restaurant and prepared take-out food services. |
| HARD ROCK CAFE and Design | 1,408,637 | 9/9/86 | T-shirts. |
| HARD ROCK CAFE | 1,504,904 | 9/20/88 | T-shirts, sweatshirts, polo shirts, sport shirts, jackets, hats, caps, bolo ties, belts and sun visors. |
| HARD ROCK CAFE and Design | 1,504,905 | 9/20/88 | T-shirts, sweatshirts, polo shirts, sport shirts, jackets, hats, caps, bolo ties, belts and sun visors. |

Copies of the foregoing certificates were presented to and reviewed by the Court. *Stipulated Facts, ¶ 6.*

7. Licensing Corporation has granted Peter Morton an exclusive license in various parts of the United States to operate restaurants and to sell merchandise under the registered HARD ROCK CAFE marks. Peter Morton, in turn, has granted licenses to certain limited partnerships in the United States to operate restaurants and sell merchandise under the registered HARD ROCK CAFE marks. Pursuant to such licenses HARD ROCK CAFE restaurants have been operated, and HARD ROCK CAFE merchandise has been sold, in such restaurants in Chicago, Illinois; Los Angeles, California; Houston, Texas; New Orleans, Louisiana; San Francisco, California; San Diego, California; Aspen Colorado; Las Vegas, Nevada; Honolulu, Hawaii; and Lahaina, Hawaii. *Stipulated Facts, ¶ 7.*

8. HARD ROCK CAFE restaurants are decorated with rock-and-roll memorabilia. Large signs bearing the HARD ROCK CAFE mark and logo hang outside of each

of the HARD ROCK CAFE restaurants. *Stipulated Facts, ¶ 8.*

9. Licensed HARD ROCK CAFE merchandise, including T-shirts, sweatshirts, polo shirts, sport shirts, jackets, hats, caps, bolo ties, belts and sun visors, is sold only at such licensed HARD ROCK CAFE restaurants. *Stipulated Facts, ¶ 9.*

10. For many years, HARD ROCK CAFE restaurants have sold "classic" HARD ROCK CAFE T-shirts, which bear the HARD ROCK CAFE and Design mark. On those "classic" HARD ROCK CAFE T-shirts, the words "HARD ROCK CAFE" are printed in a maroon/brown color. The words "HARD ROCK" are larger than the word "CAFE." There is a shadow background to the words "HARD ROCK." The words "HARD ROCK" are superimposed over a yellow/gold-colored circle. There is a concentric white ring bordered by a concentric black ring around the yellow/gold-colored circle. The word "CAFE" is positioned under the words "HARD ROCK" in the yellow/gold-colored circle. Those colors have always been the same. Exhibit 6 (Attachment A) is a classic HARD ROCK CAFE T-shirt. *Stipulated Facts, ¶ 10.*

11. Licensing Corporation has also marketed HARD ROCK CAFE shirts in which different colors have been used in the letters and circle. Exhibits 7–9. The selection of colors on its licensed merchandise is important to Licensing Corporation. *Stipulated Facts, ¶ 11.*

12. The lettering on Licensing Corporation's HARD ROCK CAFE T-shirts is stylized in a unique manner. It was created by an artist especially for Licensing Corporation. *Stipulated Facts, ¶ 12.*

13. Millions of customers have eaten at HARD ROCK CAFE restaurants. Millions of T-shirts and other merchandise bearing the HARD ROCK CAFE marks have been sold by HARD ROCK CAFE restaurants, which are the only authorized sources for genuine HARD ROCK CAFE merchandise. *Stipulated Facts, ¶ 13.*

14. In 1990 alone, over 3½ million customers ate at HARD ROCK CAFE restaurants, and more than $39,000,000 was spent by customers for food and other restaurant services at HARD ROCK CAFE restaurants. More than $47,000,000 worth of merchandise bearing the HARD ROCK CAFE mark and logo has been sold at HARD ROCK CAFE restaurants. *Stipulated Facts, ¶ 14.*

15. Licensing Corporation's HARD ROCK CAFE registered marks are distinctive, well known and famous. Licensing Corporation has developed extremely extensive and substantial goodwill in interstate commerce and foreign commerce associated with its registered HARD ROCK CAFE marks. *Stipulated Facts, ¶ 15.*

### Pacific Graphics' Actions

16. Pacific Graphics is in the business of distributing heat transfers. It is located in Blaine, Washington. *Stipulated Facts, ¶ 16.*

17. Pacific Graphics presently distributes 732 different designs of heat transfers. *Stipulated Facts, ¶ 17.*

18. A heat transfer (sometimes also referred to as "transfer") is a negative image (or mirror image) which is "transferred" by a heat process to blank garments (that is, a plain shirt, T-shirt or other garment) to create a positive image on the garment. Pacific Graphics sells its transfers to retail merchants from about $.50 apiece to about $3.75 apiece. Pacific Graphics sells its HARD RAIN CAFE design transfers for $1.75 apiece. *Stipulated Facts, ¶ 18.*

19. Pacific Graphics distributes heat transfers with the following messages: "Duck You", "Darts—Oh shit", "Safe Sex/Mongrel". *Stipulated Facts, ¶ 19.*

### Pacific Graphics' Decision To Sell "HARD RAIN CAFE" Design Transfers

20. Defendant Pacific Graphics has offered for sale transfers bearing a "HARD RAIN CAFE" design. Pacific Graphics' HARD RAIN CAFE design transfers have been applied to T-shirts and other items of sportswear. *Stipulated Facts, ¶ 20.*

21. Pacific Graphics' marketing of HARD RAIN CAFE design transfers came about when Lane James, the proprietor of a small chain of retail stores called "Just Ducky", located in Seattle, Everett, and

Mount Vernon, Washington, requested Kathy Hurd, the general manager of Pacific Graphics, to "make a HARD RAIN CAFE transfer as a souvenir design with a water puddle." *Stipulated Facts,* ¶ *21.*

22. Pacific Graphics decided to produce HARD RAIN CAFE design transfers because Ms. Hurd had concluded that they would probably sell. Ms. Hurd testified that her primary purpose in producing HARD RAIN CAFE design transfers was so that Pacific Graphics could sell them and make money. *Stipulated Facts,* ¶ *22.*

23. After her conversation with Mr. James, Ms. Hurd phoned Venture Graphics and asked the art department to come up with a HARD RAIN CAFE design with a water puddle. Ms. Hurd testified that the words "Hard Rock Cafe" were not mentioned in either conversation, as far as she could recall, and that she had no conversations with Venture Graphics about the way the HARD RAIN CAFE design transfer would look. *Stipulated Facts,* ¶ *23.*

24. Ms. Hurd testified that at the time she asked Venture Graphics to make a HARD RAIN CAFE design transfer, she had no idea what it would look like; she had no idea that it would wind up having a colored circle underneath the words "Hard Rain" or that the lettering of "Hard Rain" would be similar to the lettering in the HARD ROCK CAFE mark. *Stipulated Facts,* ¶ *24.*

25. Pacific Graphics purchased the first shipment of HARD RAIN CAFE design transfers on January 17, 1990. It received 538 transfers and paid $0.77 apiece. *Stipulated Facts,* ¶ *25.*

26. Ms. Hurd testified that prior to the time Lane James made the request to Ms. Hurd that Pacific Graphics make a HARD RAIN CAFE design transfer, Ms. Hurd was not certain whether she had heard of HARD ROCK CAFE restaurants. She testified that she was certain that she had not seen any HARD ROCK CAFE T-shirts prior to the time Mr. Lane made his request. She also testified that when Venture Graphics first showed her the artwork for the HARD RAIN CAFE design transfer,

she associated it with HARD ROCK CAFE. *Stipulated Facts,* ¶ *26.*

27. Ms. Hurd first saw a sample of the HARD RAIN CAFE transfer made by Venture Graphics on a visit that she made to pick up transfers. The sample looked like Exhibit 10 (Attachment B), which is a T-shirt bearing the design made by the first version of Pacific Graphic's HARD RAIN CAFE transfer. The only change in the sample suggested by Ms. Hurd was that Venture Graphics put more city names on the bottom. *Stipulated Facts,* ¶ *27.*

28. Ms. Hurd testified that it was her intent that the HARD RAIN CAFE design transfers make a humorous statement, and she explained the humor as follows:

Q. Can you explain what the humor is?

A. The humor?

Q. Yes.

A. Is that it's raining. It's a hard rain in Seattle. It rains hard here all the time. I mean it's constantly raining. It is constantly miserable. And as a tourist—and if I was a tourist, then that would be something that would be funny because it's hard rain. I went to Seattle and it rained while I was there, so I bought a shirt that said "Hard Rain".

Q. But you don't need the word "cafe" to do that, do you?

A. Well, in this situation as it is, it's a parody on Hard Rock.

Q. Now if I understand you correctly, you are not sure that you were aware of Hard Rock Cafe at the time you had this request from Mr. James, is that right?

A. Right.

Q. So if you weren't aware of the Hard Rock Cafe, then you couldn't have intended this as a parody on the Hard Rock Cafe, is that right?

A. Okay. Yes. But once it was made, then I became aware that, "Hey, this is similar to Hard Rock." But it wasn't because we put the water puddle—we didn't want it to be a hard rock. We didn't want it to say "Hard Rock." We wanted it to say

"Hard Rain". I don't know how to explain it. *Stipulated Facts, ¶ 28.*

Transfers Sold By Pacific Graphics

29. There have been three versions of HARD RAIN CAFE design transfers sold by Pacific Graphics. Exhibit 10 is an example of the image produced on a T-shirt by one of the first two versions of Pacific Graphics' "HARD RAIN CAFE" design transfers. *Stipulated Facts, ¶ 29.*

30. The color of the letters HARD RAIN produced by the version of Pacific Graphics' HARD RAIN CAFE transfer (as depicted in Exhibit 10) (Attachment B) is brown, similar to the maroon/brown color of the HARD ROCK words in Licensing Corporation's classic HARD ROCK CAFE T-shirts. Exhibit 6 (Attachment A). The font of the letters in Pacific Graphics' transfer is virtually identical to the font of the letters in Licensing Corporation's classic HARD ROCK CAFE T-shirts. There is a shadow background to the words "HARD RAIN" on Pacific Graphics' transfer that is virtually identical to the shadow background to the words HARD ROCK in Licensing Corporation's classic HARD ROCK CAFE T-shirts. The words "HARD RAIN" on Pacific Graphics' transfer are superimposed over an orange/red circle in the same manner as the words HARD ROCK are superimposed over the yellow/gold circle in Licensing Corporation's classic HARD ROCK CAFE T-shirts. There is a concentric white ring bordered by a concentric black ring around the orange-colored circle on Pacific Graphics' transfer just as in Licensing Corporation's classic HARD ROCK CAFE T-shirts. The word "CAFE" is under the words "HARD RAIN" on Pacific Graphics' transfer (in the orange/red-colored circle), just as the same word is situated under the words HARD ROCK in Licensing Corporation's classic HARD ROCK CAFE T-shirts. *Compare, Exhibits 6 and 10* (Attachments A and B). *Stipulated Facts, ¶ 30.*

31. The other of the first two versions of Pacific Graphics' transfer produced an image identical to that produced by Exhibit 10, except that the color of the circle is blue. *Stipulated Facts, ¶ 31.*

32. The third version of Pacific Graphics' HARD RAIN CAFE design transfer is shown in Exhibit 11 (Attachment C), which is a T-shirt with a design produced by the third version of Defendant's HARD RAIN CAFE design transfer. *Stipulated Facts, ¶ 32.*

33. The third version, Exhibit 11 (Attachment C), differs from the version shown in Exhibit 10 (Attachment B) only in two respects. First, there is an umbrella and falling rain in the upper left hand corner above the words HARD RAIN CAFE. Second, the following statement appears in the lower left hand corner of the design in a typeface much smaller than the type face of the words HARD RAIN CAFE:

> "This design is not licensed by or associated with Hard Rock Cafe Licensing Corp."

The letter "H" in the "HARD RAIN" portion of Pacific Graphics' design is 2-⅛ inches in height. The letter "H" in the "Hard Rock" statement in the lower left hand corner is only ⅛ inch in height. *Compare Exhibit 10 and Exhibit 11* (Attachments B and C). The umbrella and the quoted language were added by Pacific Graphics after it received a letter dated May 30, 1991 from a law firm representing the plaintiff in this case. *Stipulated Facts, ¶ 33.*

34. Pacific Graphics first obtained the third version of the HARD RAIN CAFE design transfer on May 9, 1991. By that time, Ms. Hurd knew that Hard Rock Cafe T-shirts were very popular with a segment of the population and wanted to continue selling HARD RAIN CAFE design transfers. *Stipulated Facts, ¶ 34.*

35. Of the 732 different designs of heat transfers presently distributed by Pacific Graphics, only one is a HARD RAIN CAFE design. *Stipulated Facts, ¶ 35.*

36. Pacific Graphics distributes catalogs of its transfers to customers. Those catalogs do not show all of the 732 transfers marketed by Pacific Graphics. On page 12 of the current 1992 catalog, the HARD

RAIN CAFE design transfer appears, with the word "HOT" in a burst adjacent to the transfer. The words, "This design is not licensed by or associated with Hard Rock Cafe Licensing Corp." in the lower part of the transfer are not legible in the catalog. Other designs on the same page have a burst that says "NEW"; the HARD RAIN CAFE transfer does not. A copy of that catalog was submitted to the Court as Exhibit 13. Prior versions of Pacific Graphics catalogs did not include the HARD RAIN CAFE transfers. *Stipulated Facts, ¶ 36.*

37. The sale of HARD RAIN CAFE design heat transfers constitutes one percent of Pacific Graphics' business or less. *Stipulated Facts, ¶ 37.*

38. Pacific Graphics sells heat transfers to T-shirt retailers. Pacific Graphics does not exercise any control over the quality of garments to which its HARD RAIN CAFE design transfers are applied by its customers. *Stipulated Facts, ¶ 38.*

39. Ms. Hurd admitted that when people look at Exhibit 10, they will think of Hard Rock Cafe. *Stipulated Facts, ¶ 39.*

40. Consumers who see T-shirts bearing the design made by Pacific Graphics' HARD RAIN CAFE design transfer associate such shirts with HARD ROCK CAFE. *Stipulated Facts, ¶ 40.*

41. Pacific Graphics has obtained all of the HARD RAIN CAFE design transfers it has sold from a Canadian company called Venture Graphics. Venture Graphics is owned by a 50% shareholder of Pacific Graphics. *Stipulated Facts, ¶ 41.*

42. Pacific Graphics will not suffer more than insignificant monetary damage if it is enjoined from selling HARD RAIN CAFE design transfers. *Stipulated Facts, ¶ 42.*

## CONCLUSIONS OF LAW

Based on the stipulated findings of fact, the Court enters the following conclusions of law:

1. Licensing Corporation has moved for a preliminary injunction, prohibiting Pacific Graphics from marketing HARD RAIN CAFE transfers. To qualify for a prelimi- nary injunction, the Licensing Corporation must show either "(1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).

## I. PROBABLE SUCCESS ON THE MERITS

### A. LANHAM ACT

■ 2. Licensing Corporation's HARD ROCK CAFE logo is a combination of a trademark which contains both words and a symbol (the graphic elements of the logo). The logo can also be viewed as trade dress. Both the words and the trade dress are registered as a trademark. Infringement of a registered trademark is actionable under 15 U.S.C. § 1114. Infringement of trade dress is actionable under 15 U.S.C. § 1125(a).

> Trade dress protection is broader in scope than trademark protection, both because it protects aspects of packaging and product design that cannot be registered for trademark protection and because evaluation of trade dress infringement claims requires the court to focus on the plaintiff's entire selling image, rather than the narrower single facet of the trademark.

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d at 613. Where, as here, the graphic elements that might otherwise be considered trade dress are part of a registered trademark, that mark should also be entitled to the broader protection afforded to trade dress.

3. In this case, Pacific Graphics has conceded that the HARD ROCK CAFE logo is a famous mark owned by Licensing Corporation. Thus, the only issue on the Lanham Act claims is whether Pacific Graphic's sales of its HARD RAIN CAFE design transfers creates a likelihood of confusion.

4. The Ninth Circuit has analyzed between 5 and 8 different factors in determin-

ing likelihood of confusion. In *Eclipse Associates, Ltd. v. Data General*, 894 F.2d 1114, 1117 (9th Cir.1990) the Court affirmed the District Court's application of the following five factor test:

1. strength of the mark;
2. similarity of the marks;
3. class of goods and marketing channels;
4. evidence of actual confusion; and
5. intent of second user.

The Court stated that those factors are "a non-exclusive series of factors that are helpful in making the ultimate factual determination" that need not be slavishly applied by the District Court. *Id.* at 1118.

5. *Strength of the mark.* The parties have stipulated that the HARD ROCK CAFE logo is famous; thus it is a strong mark. "A strong mark 'is afforded the widest ambit of protection from infringing uses'". *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir.1991 as amended October 2, 1991).

6. *Similarity of the marks.* The HARD RAIN CAFE design transfers sold by Pacific Graphics are virtually identical in design to the HARD ROCK CAFE logo: the stylized lettering in the words HARD are the same; there are only three letters that are different in the marks; and the graphics are virtually identical.

7. *Class of goods and marketing channels.* The goods involved are, in essence, identical. Pacific Graphics' transfers are used to create HARD RAIN CAFE T-shirts, which are competitive with Licensing Corporation's HARD ROCK CAFE T-shirts. As to marketing channels, Licensing Corporation's HARD ROCK CAFE T-shirts are sold only in HARD ROCK CAFE restaurants and Pacific Graphics' transfers are sold to T-shirt shops in Washington, which sell HARD RAIN CAFE T-shirts. Notwithstanding a difference in marketing, the resulting post-sale confusion which is caused after the sale of the Hard Rain Cafe design strongly weighs in favor of plaintiff's claim and its likelihood of success.

■ 8. *Evidence of actual confusion.* Proof of actual confusion is not necessary. As the Court stated in *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, supra,

[I]n this circuit, actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 832 (9th Cir.1991). Likelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks. *Shakey's Inc. [v. Covalt ]*, 704 F.2d [426] at 431 [9th Cir.1983].

*Accord, Eclipse Associates, Ltd. v. Data General Corp.*, 894 F.2d at 1118 (evidence of actual confusion is difficult to obtain).

■ 9. *Intent of the second user.* Mrs. Hurd testified that she was not certain whether she had heard of HARD ROCK CAFE restaurants when one of her customers requested that she make a HARD RAIN CAFE design. *Stipulation*, Par. 26. She testified that she had not seen any HARD ROCK CAFE T-shirts prior to that request. *Id.* She testified that when she requested that Venture Graphics make a HARD RAIN CAFE design transfer, she had no idea what the HARD RAIN CAFE design would look like. *Stipulation*, Par. 24. Regardless of actual intent, the defendant has knowingly adopted a mark substantially similar to plaintiff's mark. The Court should therefore presume that the defendant will accomplish its purpose and that the public will be deceived. *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, supra.

■ 10. From the foregoing the Court concludes that Licensing Corporation is likely to succeed on its trademark infringement and Lanham Act Section 43(a) claims.

B. DILUTION

11. Because the Court has ruled that there is a violation of the Lanham Act, there is no need to decide the claim of dilution and accordingly the Court makes

no Findings of Fact or Conclusions of Law regarding dilution.

## C. PACIFIC GRAPHICS' PARODY ARGUMENT

■ 12. Parody is not a defense to trademark infringement, but rather is another factor to be considered in the likelihood of confusion equation. *Schieffelin & Co. v. Jack Co. of Boca*, 725 F.Supp. 1314, 1323 (S.D.N.Y.1989); *Mutual of Omaha Ins. Co. v. Novak*, 648 F.Supp. 905, 910 (D.Neb.1986), *aff'd*, 836 F.2d 397 (8th Cir. 1987), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988). A "true" parody will be "so obvious and heavy handed that a clear distinction [is] preserved in the viewer's mind between the source of the actual product and the source of the parody." *Mutual of Omaha*, 648 F.Supp. at 910. A defendant's claim of parody will be disregarded where the purpose of the similarity is to capitalize on a famous mark's popularity for the defendant's own commercial use. *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1175 (C.D.Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir.1987).

13. In the *Mutual of Omaha* case, after a comparison of the trademark (Mutual of Omaha) with the defendant's design (Mutant of Omaha) the court noted:

[t]he lettering styles are identical, the Indian head logo depicts the same side view of a war-bonneted head, and the substitution of "Mutant" for "Mutual" is confusing and suggestive especially upon a brief glance.... While there are differences that can be pointed out in a side-by-side comparison, on the whole the name and logo created a substantially similar concept, image and feel which the Court finds is likely to create confusion as to source, affiliation or sponsorship on the part of consumers.

648 F.Supp. at 909–910. In this case, the defendant's attempt at parody was not sufficient to destroy the potential for consumer confusion. *Id.* at 1324.

■ 14. In this case, Pacific Graphics' wholesale copying of the HARD ROCK CAFE logo cannot be explained or excused by parody. Initially, Pacific Graphics appropriated the color scheme, shapes, lettering, size, and background of the classic HARD ROCK CAFE T-shirt. The only difference between the first HARD RAIN CAFE design and the classic HARD ROCK CAFE T-shirt is the three letters in the second word of the mark: the graphics are indistinguishable.

15. This case is different from those cases in which courts have found that the junior user's mark is a true parody. In some cases, courts have found no likelihood of confusion where the degree of copying of the plaintiff's trademark is slight.[1] That is not the case here, where the entire HARD ROCK CAFE logo has been appropriated by Pacific Graphics.

16. Courts have also found no likelihood of confusion on the basis of parody where the subject matter concerns social commentary.[2] That is not the case here.

---

**1.** *See, e.g., Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 117 (2d Cir.1984) ("[T]he two characters [defendant's "Donkey Kong" and plaintiff's "King Kong"] and stories are so different that no question of fact was presented on the likelihood of confusion."); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir. 1981) (not only were goods unrelated but "Bagzilla" creature was mere humorous caricature of plaintiff's "Godzilla"); *Eveready Battery Co. v. Adolph Coors Co.*, 765 F.Supp. 440, 450 (N.D.Ill. 1991) ("[T]he unmistakable *differences* between the Energizer Bunny and Leslie Nielsen in modified rabbit attire arguably generate much of the humor in the Coors parody."); *Jordache Enter. v. Hogg Wyld, Ltd.*, 625 F.Supp. 48 (D.N.M.1985) (defendants' "Lardashe" mark with pig insignia could not be confused with plaintiff's trademark "Jordache" and horse insignia), *aff'd*, 828 F.2d 1482 (10th Cir.1987); *Universal City Studios v. Casey & Casey, Inc.*, 622 F.Supp. 201, 204 (S.D.Fla.1985) (cartoon of two well-dressed mice with caption "Miami Mice" not sufficiently similar to "Miami Vice" human characters to cause a likelihood of confusion), *aff'd*, 792 F.2d 1125 (11th Cir.1986).

**2.** *See, e.g., Cliffs Notes v. Bantam Doubleday Dell Pub. Group*, 886 F.2d 490 (2d Cir.1989) (parody deserves freedom as a form of social and literary criticism; risk of confusion between "Cliffs Notes" study guides and "Spy Notes," which follow format similar to Cliff Notes but poke fun at modern literature, is outweighed by First Amendment rights); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir.) (trademark owner's rights extend to commercial uses of mark but cannot be used to suppress points

17. Parody is no defense to Pacific Graphics' misappropriation of the famous HARD ROCK CAFE logo. Defendant's copying of Hard Rock's design is far from slight. *Mutual of Omaha Ins. Co. v. Novak*, 648 F.Supp. 905 (D.Neb.1986), *aff'd*, 836 F.2d 397 (8th Cir.1987), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988). *See, Walt Disney Prod. v. Air Pirates*, 581 F.2d 751 (9th Cir.1978). Plaintiff has under all the circumstances demonstrated a high likelihood of confusion and therefore a high likelihood of success on the merits.

18. Thus, the Court concludes that Defendant's parody defense fails as to all of Licensing Corporation's claims.

## II. IRREPARABLE HARM

19. In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). In this case, it is not contested that T-shirt shops which purchase Pacific Graphics' HARD RAIN CAFE transfers may apply those transfers to any type of garment, without regard to its quality. Given that Pacific Graphics has stipulated that consumers associate the HARD RAIN CAFE design with HARD ROCK CAFE, it is likely that they will also associate any defects in HARD RAIN CAFE garments with HARD ROCK CAFE, damaging plaintiff's reputation.

20. The Court concludes that Licensing Corporation has demonstrated that it will suffer irreparable injury if the preliminary injunction is not granted.

## III. BALANCE OF HARDSHIPS

21. The HARD ROCK CAFE logo is an extremely valuable asset to Licensing Corporation, as is demonstrated by the fact that more than 47 million dollars' worth of HARD ROCK CAFE merchandise has been sold at HARD ROCK CAFE. The HARD ROCK CAFE logo symbolizes the goodwill connected with Licensing Corporation's business, and that goodwill should not be jeopardized by placing it in the hands of Pacific Graphics.

22. The Court finds that the entry of an injunction would not cause substantial harm to Pacific Graphics. The sale of HARD RAIN CAFE design transfers is less than one percent of Pacific Graphics' business. On that ground alone the balance of hardships tips decidedly in favor of Licensing Corporation. *Midway Mfg. Co. v. Artic Int'l, Inc.*, 547 F.Supp. 999, 1014 (N.D.Ill.1982), *aff'd*, 704 F.2d 1009 (7th Cir. 1983) (balance of hardships tipped in plaintiff's favor where the sale of the accused devices was a small part of defendant's business). The only harm Pacific Graphics will suffer if an injunction is entered is a small loss of profits. That is no hardship under these circumstances, where the defendant has misappropriated the plaintiff's entire logo. *Helene Curtis Industries v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) ("Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed.", *quoting My–T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir.1934)).

23. The Court thus concludes that the balance of hardships tips substantially in favor of granting Licensing Corporation's motion for a preliminary injunction. Furthermore the defendant has stipulated that if the preliminary injunction motion is granted a permanent injunction may be entered.

For the foregoing reasons,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that, in accordance with Rule 65 of the Federal Rules of Civil Procedure, Defendant Pacific Graph-

of view; thus, defendant's "L.L. Beam's Back-To–School–Sex–Catalog" was not an infringement of the "L.L. Bean" mark), *cert. denied*, 483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed.2d 753 (1987); *Girl Scouts of U.S.A. v. Personality Posters Mfg.*, 304 F.Supp. 1228 (S.D.N.Y.1969) (makers of poster featuring pregnant Girl Scout with phrase "Be Prepared" were not in any way competing with Girl Scouts).

ics, Inc., its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are permanently enjoined from engaging in any of the following acts:

(i) infringing Licensing Corporation's HARD ROCK CAFE logo in any manner;

(ii) diluting the distinctive quality of Licensing Corporation's HARD ROCK CAFE mark in any manner;

(iii) unfairly competing with Licensing Corporation; and,

(iv) manufacturing, printing, silk screening, reproducing, marketing, distributing, selling, offering to sell, displaying, moving or transferring merchandise bearing the mark "HARD RAIN CAFE" or any mark which is a colorable limitation of or confusingly similar to Licensing Corporation's registered HARD ROCK CAFE marks and logo.

ATTACHMENT A

(EXHIBIT 6)

ATTACHMENT B

SEATTLE

(EXHIBIT 10)

ATTACHMENT C