NIKE, INC., (an Oregon corporation),
Plaintiff,

v.

"JUST DID IT" ENTERPRISES (a business of unknown legal character); Michael Stanard (an Illinois resident); and John Does 1 through 5 (Illinois residents and/or business entities of unknown legal character), Defendants.

No. 91 C 4001.

United States District Court,
N.D. Illinois, C.D.

Sept. 2, 1992.

James Dominick Adducci, Schuyler, Roche & Zwirner, Chicago, Ill., Alan S. Cooper, Banner, Birch, McKie & Beckett, Washington, D.C., for plaintiff.

Walter Peter Maksym, Jr., Walter P. Maksym & Associates, Oak Brook, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the court on plaintiff's and defendant's cross-motions for summary judgment pursuant to Rule 56 Fed.R.Civ.P. For the reasons set forth below, plaintiff's motion is granted, and defendant's motion is denied.

## BACKGROUND

Plaintiff Nike, Inc. ("Nike") filed this suit against defendant Michael Stanard ("Stanard") alleging trademark infringement, unfair competition, trademark dilution, and deceptive trade practices arising out of defendants' manufacture and sale of T-shirts and sweatshirts bearing the logo "MIKE," displayed in the same typeset and along with a reproduction of the Swoosh stripe for which Nike has been granted trademark protection. Moreover, Nike contends that defendants' use of the tradename "Just Did It" Enterprises constitutes infringement on Nike's slogan "Just Do It." Both parties have filed motions for summary judgment pursuant to Rule 56 Fed.R.Civ.P.

Summary judgment is appropriate where the submissions of the parties indicate that no genuine issue of material fact stands in the way of judgment as a matter

**896**

of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the submissions of the parties show that the parties agree on the material facts of the case: Stanard offered for sale, sold and distributed through the mail T-shirts and sweatshirts bearing the name "Mike", set in the same typestyle and along with the Swoosh stripe that Nike uses as its trademark, using the company name "Just Did It" Enterprises. Yet, the parties disagree about the legal consequences of Stanard's actions. Nike argues that Stanard's activities constitute trademark infringement and unfair competition, and seek injunctive relief as well as attorneys fees. Stanard argues his work is protected as a parody, and therefore Nike is not entitled to any relief.

### DISCUSSION

Nike seeks an order that defendants have infringed its exclusive rights in the trademark NIKE, the Swoosh stripe design, the NIKE and Swoosh design combination, and the trademark slogan "Just Do It." Nike seeks a permanent injunction enjoining defendants from further use of the NIKE, Swoosh stripe, and "Just Do It" trademarks. Nike also seeks the following relief: 1) an order pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118 requiring defendants to deliver for destruction all infringing articles, 2) an order pursuant to § 35(b) of the Federal Trademark Act, 15 U.S.C. § 1117(b), requiring defendants to account for and pay Nike for all profits they have realized from the infringing activity, and 3) an order requiring defendants to costs of this action and reasonable attorneys' fees, in accordance with § 35 of the Federal Trademark Act, 15 U.S.C. § 1117.

■ In order to obtain an injunction, Nike must establish the following: 1) that it will or has succeed on the merits, 2) no adequate remedy at law exists; 3) irreparable harm will arise absent injunctive relief, 4) the irreparable harm that Nike will suffer in absence of injunctive relief out-

weighs the irreparable harm Stanard will suffer if the injunction is granted, and 5) the injunction will not harm the public interest. *Amoco Production v. Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987); *U.S. v. Rural Electric Convenience Coop. Co.*, 922 F.2d 429, 432 (7th Cir.1991). Each of these elements will be discussed in turn.

### I. *Success on the Merits*

■ In order to establish liability for trademark infringement and unfair competition, Nike must show: 1) that it has a protectible trademark, and 2) likelihood of confusion as to the source or origin of defendants' product. *See e.g. International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988). Nike has clearly established that it has a protectible trademark. The trademark NIKE, the Swoosh stripe design, and the trademark NIKE along with the Swoosh stripe are registered trademarks.[1] Their registration provides *prima facie* evidence of their validity as trademarks and of Nike's exclusive right to use the marks on apparel and related accessories. *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366 (7th Cir. 1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Moreover, each of these registrations have become incontestable under § 15 of the Federal Trademark Act, 15 U.S.C. § 1065, and accordingly constitute conclusive evidence of their distinctiveness as trademarks. *Id.* at 377.

■ Although it is not registered, the slogan "Just Do It" is also entitled to trademark protection. An unregistered mark is still entitled to trademark protection where its use is inherently distinctive as applied to the goods on which it is used, or where its use has acquired secondary meaning in the marketplace. *See International Kennel Club*, 846 F.2d at 1085. Although Stanard is correct in arguing that "Just Do It" is a common phrase used in the English language, Nike's use of the phrase in association with apparel makes it distinctive and arbitrary so that it is enti-

---

**1.** Registration Nos. 1,277,066; 1,284,385; and   1,237,469.

tled to trademark protection. *See Tisch Hotels, Inc. v. American Inn, Inc.*, 350 F.2d 609 (7th Cir.1965). Moreover, Nike's extensive use of the phrase in conjunction with its promotion of its products has given it significant public recognition. Therefore, we conclude as a matter of law that Nike has established the validity of the marks in question.

Next we must evaluate the likelihood of confusion resulting from Stanard's use of MIKE with the Swoosh stripe. In *McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir. 1986), the Seventh Circuit set forth seven factors to be analyzed in determining the likelihood of confusion:

> [T]he degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another.

787 F.2d at 1167–68. Evaluating these factors, we find that there is a significant likelihood of confusion resulting from Stanard's use of a mark similar to Nike's. A comparison of plaintiff's and defendant's marks reveals that they are virtually identical. In fact, the only difference between the marks is that Stanard has substituted an "M" for the "N", thus using the word "MIKE" rather than "NIKE". Even Stanard himself admitted in his deposition that from a distance, the two marks could not be distinguished. (Stanard Deposition, p. 115).

Moreover, both parties sell T-shirts and sweatshirts. Both parties' merchandise is offered to the general public, although Stanard has limited his offering to persons named "Mike". However, people named "Mike" are part of the consumer market which purchases Nike products. Moreover, 44 of the 123 orders which Stanard received were from persons with names other than Mike. (Stanard Deposition). Additionally, purchasers of defendant's goods are not likely to exercise a particularly high degree of care in purchasing them. (Stanard Deposition, pp. 16–17).

As we discussed above, Nike's marks are worthy of strong protection. Each of these marks has been used extensively in Nike's promotion and advertising, and it is undisputed that the marks are widely recognized and associated with plaintiff. Moreover, the incontestable status of Nike's federal registrations is also evidence of the strength of the marks. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988).

Evidence has been submitted which indicates that Stanard intended to pass off his merchandise as that of Nike. In addition to constructive notice of Nike's trademark rights by virtue of § 22 of the Federal Trademark Act, 15 U.S.C. § 1072, Stanard admits to having actual knowledge of Nike's trademark rights as well as a desire to benefit from Nike's advertising and promotion. (Stanard Deposition, pp. 36, 59, 66–67, 74, 107, 171). When asked at his deposition whether someone reading his T-shirt from across the room may think that it says NIKE, Stanard responded. "That's the whole point." (Stanard Deposition, p. 115).

■ The final factor for consideration in evaluating likelihood of confusion is actual confusion. However, evidence of actual confusion is not required for likelihood of confusion to be established. *Tisch Hotels*, 350 F.2d at 611. Here, while Nike has not submitted any evidence of actual confusion, even Stanard has admitted that actual confusion could occur if his products were viewed from a distance. (Stanard Deposition, p. 115). Moreover, given that our evaluation of the other six factors tilts towards Nike's position, we find that Nike has sufficiently demonstrated likelihood of confusion and has demonstrated trademark infringement.

■ However, Stanard argues that his work is entitled to protection under the First Amendment as a parody. In support of his parody argument, Stanard cites several cases where seemingly infringing ac-

tivity was protected under the First Amendment as a parody. *See e.g. Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 625 F.Supp. 48 (D.N.M.1985), *aff'd*, 828 F.2d 1482 (10th Cir.1987); *Cliff's Notes v. Bantam–Doubleday Dell Publishing Group*, 886 F.2d 490 (2d Cir.1989). Parody is not a defense to trademark infringement, but rather it is another factor to be considered in determining the likelihood of confusion. *Mutual of Omaha Ins. Co. v. Novak*, 648 F.Supp. 905, 910 (D.Neb.1986), *aff'd*, 836 F.2d 397 (8th Cir.1987), *cert. denied*, 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988). In addition, a defendant's parody argument will be disregarded where the purpose of the similarity between the marks is to capitalize on the popularity of the famous mark for the defendant's commercial use. *Grey v. Campbell Soup Co.*, 650 F.Supp. 1166, 1175 (C.D.Cal.1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987).

In *Mutual of Omaha, supra*, the defendant designed a logo displaying the words "Mutant of Omaha" and featuring a war-bonneted, emanciated human face. This design was placed on T-shirts in conjunction with the phrase "Nuclear Holocaust Insurance." The reverse side of the T-shirts read, "When the world's in ashes, we'll have you covered." Defendant also designed a shirt reading "Mutant of Omaha's Wild Kingdom," featuring a one-eyed tiger. Plaintiff Mutual of Omaha, whose primary business is selling insurance, filed a lawsuit claiming that defendant's design infringed on their trademark, which featured the words "Mutual of Omaha" and an Indian headdress. In finding that defendant's logo constituted trademark infringement, the court rejected defendant's claim of parody, finding that defendant's logo did not create a clear distinction as to the source of the message and did not dispel the likelihood of confusion, like an appropriate parody would. 648 F.Supp. at 910.

Similarly, in *Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc.*, 776 F.Supp. 1454 (W.D.Wash.1991), *supra*, defendant designed heat transfers for T-shirts bearing the logo "Hard Rain Cafe". Defendant claimed that this was a parody, in attempt to poke fun at the constant rain in Seattle. However, the court rejected defendant's parody argument, finding that the logo designs were so similar that consumer confusion was likely. 776 F.Supp. at 1462.

The cases cited by Stanard where the courts have found no infringement can be distinguished. In *Cliff's Notes, supra*, the publishers of *Spy* magazine participated in publishing a series of books known as *Spy Notes*, as a parody of the *Cliff's Notes* study guides. The court found that there was no likelihood of confusion between the two publications. The court noted the difference in appearance of the covers of the two publications, and that the words "A Satire" appear five times on the cover and four times on the back of *Spy Notes*. Moreover, while *Cliff's Notes* are available for classic literature, *Spy Notes* were produced for modern novels "depicting the drug abuse, promiscuity and post-adolescent angst of the 1980s." The court also pointed out that potential consumers of both products, primarily college students, would note *Spy Notes'* affiliation with *Spy* magazine, which itself is a satire, and would realize that it is a parody. Thus considering these factors, the court concluded that there was little likelihood of confusion between the two publications.

Moreover, in *Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F.Supp. 785 (E.D.N.Y. 1983), plaintiffs sued for infringement where defendant had created a sticker for its "Wacky Packs" depicting a fictional product of "Petley Flea Bags," a parody of "Tetley Tea Bags." The court found that there was no likelihood of confusion because the sticker was found in Topps' "Wacky Packages" with four other stickers which also satirized other products. Thus it was apparent from both the appearance of the sticker, and from the way that it was marketed and sold, that it was a parody.

Contrary to *Cliff's Notes* and *Tetley*, where the packaging of defendants' products gave clear notice that it was a satire, in the instant case, it is not clear from viewing Standard's merchandise that it is intended as a parody. Stanard is producing and selling T-shirts and sweatshirts,

just like Nike. Moreover, unlike *Cliff's Notes* and *Tetley*, here one of defendant's satirizing products can be substituted for one of Nike's products.

The only case cited by defendants which bears a striking similarity to the facts in this case is *Jordache Enterprises v. Hogg Wyld, Ltd.*, 625 F.Supp. 48 (D.N.M.1985). There, defendants created and sold designer jeans bearing the name "Lardache" and featuring a pig's head as the logo. Plaintiff, a well-known maker of designer jeans, including a line of clothing for large-sized women, claimed that defendants' product infringed upon their name "Jordache" and logo of a horse's head. The court found that the logos were sufficiently different to limit consumer confusion. The court found that while Jordache's mark was refined and subtle, presenting an image of "class", the Lardache mark and pig was brash, brightly colored, and conveyed a "cute, humorous" image. 625 F.Supp. at 53.

We find that the circumstances presented in this case are more akin to those in *Mutual of Omaha* and *Hard Rock*, and find that defendants' use of the MIKE logo and Swoosh stripe creates a likelihood of confusion so as to constitute infringement and unfair competition. We therefore find that Nike will succeed on its infringement claims.

## II. *Other Factors*

In actions for trademark infringement or unfair competition, once the plaintiff has proven likelihood of confusion, the inadequacy of other remedies and irreparable harm is ordinarily presumed. *See e.g. Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987). Here, as in *Hard Rock Cafe, supra*, Nike has no control over the quality of the garments to which Stanard affixes the MIKE logo. Given that the two marks are confusing, it is possible that consumers may attribute any defects in a MIKE garment to NIKE, thus further damaging its reputation. *See generally Hard Rock Cafe*, 776 F.Supp. at 1463.

The balancing of hardships based on whether an injunction is issued tips decidedly in favor of Nike. Nike has invested a great deal of time and effort in advertising and promoting its trademarks NIKE, Swoosh stripe, and "Just Do It," thus making them the strong, famous, and valuable marks that they have become. Nike has spent over Three Hundred Million Dollars ($300,000,000) on the advertising and promotion of its products during the years 1977 to August, 1991. (Affidavit of Thomas Niebergall, ¶ 4). Since 1971, aggregate sales of Nike apparel have exceeded Ten Billion Dollars ($10,000,000,000). (Niebergall Affidavit, ¶ 6). If others are allowed to use confusingly similar marks, the name recognition and goodwill that Nike has developed will suffer.

On the other hand, Stanard will not be significantly harmed if he is ordered to cease producing the MIKE garments. Stanard admits that he has not made any profit from his distribution of MIKE merchandise, so he will suffer no financial harm. The only harm which Stanard can allegedly suffer is the stifling of his free expression. Yet, as we discussed above, the First Amendment does not grant Stanard the right to infringe on Nike's trademarks where there is a likelihood of confusion. We therefore find that balancing of hardships tips in favor of Nike.

Because we find that Nike prevails on the merits, that Nike will suffer irreparable harm should an injunction not be granted, and that the balancing of harms tips decidedly in favor of Nike, we grant a permanent injunction preventing defendants from infringing on any Nike trademark in any manner. We also order Stanard to deliver any remaining merchandise, advertisement, or any other material bearing the MIKE logo, pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118. Since Stanard has stated under oath that he did not make a profit, we will not require an accounting pursuant to § 35(b) of the Federal Trademark Act, 15 U.S.C. § 1117(b).

## *Attorneys Fees*

Section 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a), provides that in exceptional cases of trademark infringement, the prevailing party is entitled

to reasonable attorneys' fees, absent extenuating circumstances. The "exceptional case" requirement can be fulfilled where it can be shown that defendant's infringing acts were willful and intentional. *See Centaur Communications v. A/S/M/ Communications,* 830 F.2d 1217, 1229 (2d Cir. 1987); *Stone v. Lozos,* 223 USPQ 301, 302, 1983 WL 682 (N.D.Ill.1983).

 Here, Stanard willfully and knowingly designed his product to infringe on Nike's trademark. He purposely designed his shirts to resemble Nike products, using the same typeset and trademark Swoosh stripe as Nike's merchandise. Stanard named his company "Just Did It" Enterprises in order to further identify his product with Nike's. Even Standard admitted that from a distance, his products could be mistaken for those of Nike. Moreover, Stanard's own solicitation letter reveals that he knew his activity constituted infringement, as he states: "As you might imagine, this is probably going to be a VERY LIMITED OFFER!"

When Nike contacted Stanard about ceasing his infringing activity, Stanard responded with a signed letter stating that "this corporation is not doing business as "Just Did It" Enterprises and we are not in the business of marketing T-shirts and sweatshirts." Yet, despite Nike's objections, Stanard continued his infringing activity: marketing T-shirts and sweatshirts under the name of "Just Did It" Enterprises. We therefore find that Stanard's infringement was willful and intentional, thus qualifying this as an exceptional case of infringement warranting the imposition of reasonable attorneys' fees.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is granted, and defendants' motion is accordingly denied. It is therefore ordered that defendants be permanently enjoined from engaging in any activity which infringes on any of plaintiff's trademarks or logos. Defendants are required to deliver any remaining merchandise or promotional materials displaying the MIKE mark. Finally, defendants shall pay plaintiff reasonable attorneys fees.